UNITED STATES of America,
Plaintiff–Appellee,

v.

Robert Owen COX, Defendant–
Appellant.

Nos. 91–5638, 91–5847.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 21, 1992.
Decided Feb. 27, 1992.

Joseph M. Whittle, U.S. Atty., E. Brian Davis, Asst. U.S. Atty. (argued and briefed), Office of the U.S. Atty., Louisville, Ky., for plaintiff-appellee.

Vincent F. Mallon (argued and briefed), Louisville, Ky., for defendant-appellant.

Before GUY, NORRIS and BATCHELDER, Circuit Judges.

PER CURIAM.

Defendant, Robert Cox, was convicted of knowingly transmitting in interstate commerce a communication containing a threat. 18 U.S.C. § 875(c). On appeal, Cox argues that the evidence was insufficient to prove guilt beyond a reasonable doubt and that the trial court erred in certain evidentiary rulings.

Upon a review of the record, we conclude that defendant's claims of error are without merit, and we affirm.

## I.

Cox was delinquent in his truck loan payments owed to Cumberland Federal Savings Bank, and, on July 3, 1990, the bank directed General Adjusting Service, Inc., to repossess the truck. Apparently, when the truck was repossessed, it contained certain items of personal property belonging to the defendant.

On July 5, 1990, Cox telephoned the bank and asked to speak to Michael Jones, with whom he had previously talked relative to his loan delinquency. When Jones did not come to the telephone, Cox became angry and profane, and stated: "I tell you what, you all better have my personal items to me by five o'clock today or its going to be a lot of hurt people there." This telephone call was placed by Cox while in Indiana to the bank which is located in Louisville, Kentucky. It is this telephone call that forms the basis for the indictment.

When Cox's threat was reported to Jones, he informed the security officer for the bank and also telephoned Arnold Portman at General Adjusting, who actually had possession of the truck, and asked him to telephone Cox. Portman telephoned Cox, who was belligerent and used foul language. Cox also threatened to kill Portman and then go to the Cumberland Bank and kill people there, stating that only a bullet could stop him. Since this was an intrastate call, it did not serve as part of the predicate for the indictment.

Before the truck was repossessed in May 1990, Cox and Jones had a telephone conversation in which Jones threatened to drive the truck into a Florida canal before he would give it back to the bank. In this same conversation, Cox also said that when he got back to Louisville he would contact Jones. Cox seemed very upset during this conversation.

At trial, the judge allowed testimony as to both the Portman call and the May conversation between Cox and Jones; however, the jury was given a limiting instruction and told they must decide the case on the basis of "the Indiana to Kentucky call."

## II.

The Sufficiency of the Evidence

Since Cox made no motion for judgment of acquittal, our review of the sufficiency of the evidence is limited to finding plain error resulting in a "manifest miscarriage of justice." *United States v. Swidan*, 888 F.2d 1076, 1080 (6th Cir.1989). Cox claims the evidence was insufficient in three areas: (1) the threat was conditional and equivocal; (2) the threat was not specific to any person; and (3) the United States failed to prove Cox's intent beyond a reasonable doubt. As we view these claims of error, we see them not so much as challenges to the sufficiency of the evidence but, rather, as questions relating to the precise contours of the charged offense. We address these claims seriatim.

## A.

There is authority for the proposition that a conditional threat may not be the kind of statement that is proscribed by 18 U.S.C. § 875(c). For example, in *Watts v. United States*, 394 U.S. 705, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969), the defendant

was prosecuted for stating at a political gathering, "If they ever make me carry a rifle the first man I want to get in my sights is L.B.J." *Id.* at 706, 89 S.Ct. at 1400–01. In holding that this was not a prosecutable threat against the President, the Court considered the conditional nature of the threat, the fact that it was made during a political discussion, and the fact that the response of the audience was laughter. In context, the statement clearly could be considered political hyperbole, albeit extreme.

In contrast, here we are dealing with a statement made in anger and directed to one who could be a victim if the threat were carried out. Furthermore, there was no way that the defendant's personal property could be delivered to him by the five o'clock deadline to which he referred. In *United States v. Bozeman*, 495 F.2d 508, 510 (5th Cir.1974), *cert. denied*, 422 U.S. 1044, 95 S.Ct. 2660, 45 L.Ed.2d 696 (1975), the court reasoned that a threat is not to be construed as conditional if it had a reasonable tendency to create apprehension that its originator will act in accordance with its tenor. Applying that test here, we believe a reasonable jury could find that the threat properly was perceived as real, particularly in light of the previous conversation between Jones and Cox and Cox's subsequent threats to Portman.

### B.

■ Cox would avoid responsibility under the statute by claiming that the alleged threat did not identify any specific person or group. We do not read the statute to be so limited, and Cox cites no cases that have placed this restrictive interpretation on the statute. The defendant's threat reasonably could be interpreted in context to mean that he was planning to go to the bank and "hurt people." Since the person to whom he was speaking worked at the bank, she reasonably would be apprehensive because of the threat. Similarly, Mr. Jones, to whom the threat was communicated, also had reason to feel threatened.

In cases involving the companion statute, 18 U.S.C. § 876, prohibiting the mailing of threatening communications, the courts have concluded that a specific individual as a target of the threat need not be identified. *See, e.g., United States v. Lincoln*, 589 F.2d 379 (8th Cir.1979) (defendant mailed letters threatening to kill the judges of the Eighth Circuit).

### C.

■ The defendant claims the "indictment does not allege, nor was it proved that Robert Cox *intended* that his communication be taken as a threat, a necessary element." (Def's. Brief at 16–17). The only case relied upon by the defendant to buttress this proposition, *United States v. Kelner*, 534 F.2d 1020 (2d Cir.), *cert. denied*, 429 U.S. 1022, 97 S.Ct. 639, 50 L.Ed.2d 623 (1976), does not provide any support for his argument.

Cox's attempt to attack the indictment comes too late. Alleged defects in the indictment must be raised prior to trial or are deemed waived. Fed.R.Crim.P. 12(b). In any event, the indictment did charge that Cox "knowingly" transmitted the threat, which is sufficient to supply the intent requirement.

Insofar as the proof of intent is concerned, the government need not prove Cox's subjective intent, since "a threat is not a state of mind in the threatener; it is an appearance to the victim." *United States v. Holzer*, 816 F.2d 304, 310 (7th Cir.), *vacated for reconsideration on other grounds*, 484 U.S. 807, 108 S.Ct. 53, 98 L.Ed.2d 18 (1987). Both Geraldine Baxter, who took Cox's telephone call, and Michael Jones took the threat seriously, and so testified at trial.[1] Thus, the intent element is satisfied by the government presenting undisputed evidence that Cox knowingly made the telephone call that transmitted the threat.

### III.

#### The Evidentiary Rulings

The core of this issue is the decision by the trial judge to allow into evidence testi-

---

**1.** We find no merit to defendant's argument that Baxter and Jones should not have been allowed

to testify that they felt threatened by the telephone call from Cox.

mony concerning the May telephone conversation between Cox and Jones and the July 5, 1990, telephone conversation between Portman and Cox. For two reasons, we reject defendant's suggestion that the trial court erred.

First, the defendant did not properly preserve this issue for appellate review. Although defendant now argues that Fed. R.Evid. 404(b) directs that this evidence should have been excluded, he made no such argument at trial. When this evidence was offered, defense counsel's only objection was that he had not been supplied with a copy of these "statements" prior to trial. Thus, once again, we can only take cognizance of the claimed error in admitting this evidence if "plain error" resulted. Fed.R.Crim.P. 52(b). This leaves us with only a very limited review.

> The Supreme Court and numerous federal courts have repeatedly stated that the plain error doctrine is to be used sparingly, only in exceptional circumstances, and solely to avoid a miscarriage of justice. Recourse may be had to the doctrine "only on appeal from a trial infected with error so 'plain' the trial judge and prosecutor were derelict in countenancing it."

*United States v. Hook*, 781 F.2d 1166, 1172 (6th Cir.) (citations omitted), *cert. denied*, 479 U.S. 882, 107 S.Ct. 269, 93 L.Ed.2d 246 (1986).

 In this instance, however, the defendant lost little, if anything, by not making a Rule 404(b) objection at trial because we believe the admission of the evidence was well within the discretion of the trial judge. *See United States v. Betancourt*, 838 F.2d 168, 176 (6th Cir.), *cert. denied*, 486 U.S. 1013, 108 S.Ct. 1748, 100 L.Ed.2d 210 (1988).

The Supreme Court has stated that, in reviewing claims of error involving Rule 404(b), the threshold inquiry is whether such evidence is "probative of a material issue other than character." *Huddleston v. United States*, 485 U.S. 681, 686, 108 S.Ct. 1496, 1499, 99 L.Ed.2d 771 (1988).

Stated another way, the evidence must "serve a permissible purpose." *United States v. Huddleston*, 811 F.2d 974, 976 (6th Cir.1987), *aff'd*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988). Once this threshold is passed, and we conclude it was here, the next inquiry is "whether the probative value of the evidence [was] outweighed by its potential prejudicial effect." *Id.* In making both of these determinations, the trial judge is accorded broad discretion. *United States v. Vance*, 871 F.2d 572, 576 (6th Cir.), *cert. denied*, 493 U.S. 933, 110 S.Ct. 323, 107 L.Ed.2d 313 (1989).

Since the defendant admits to making both calls, we have no need to engage in collateral inquiries as to whether the other acts were committed by the defendant. Second, the defendant admits to using language in his interstate telephone call that could be construed as a threat, but argues that he did not mean it as such. When the defendant offers lack of intent as a defense, even though the government does not have to prove subjective intent as an element of the offense, the circumstances surrounding the making of the calls becomes relevant. The evidence offered clearly was probative of defendant's state of mind and tends to counter his allegation of benign purpose.

There is no doubt that the evidence was prejudicial to defendant's case, but the balancing test in which probative value is weighed against prejudicial effect primarily involves evidence that is collateral in nature. When probative evidence is offered that relates directly to a defense being raised, it is only the rare case in which such evidence would be excluded as being overly prejudicial.[2]

AFFIRMED.

---

2. We do not address defendant's argument that his First Amendment free speech rights were violated by this prosecution because it is made for the first time on appeal. Even if the issue were properly before us, however, we would find it to be without merit. The cases relied

upon by defendant involve either political speech or speech that could be classified as debate on public issues. No such speech is involved here.