UNITED STATES of America,
Plaintiff–Appellee,

v.

Benny COWART, Defendant–Appellant.

No. 95–5506.

United States Court of Appeals,
Sixth Circuit.

Argued May 7, 1996.

Decided July 22, 1996.

RYAN, Circuit Judge.

The defendant, Benny Cowart, appeals from the judgment and sentence imposed following his jury conviction on one count of conspiring to distribute marijuana, in violation of 21 U.S.C. § 846, and one count of possessing marijuana with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1). On appeal, Cowart contends that the district court plainly erred in admitting evidence, under Fed.R.Evid. 404(b), that he was arrested for possession of marijuana after the events at issue here, and that the district court erred in sentencing him as a career offender. We will affirm the judgment and sentence.

## I.

In 1990, while residing in a Texas halfway house at the completion of a federal sentence for two counts of bank robbery, Benny Cowart met and became friends with Robert Daniel Johnson. Johnson was completing a sentence for distribution of marijuana. The two remained friends after parole, an alliance both might better have avoided. Cowart began supplying marijuana to Johnson, who in turn sold it to a third party, Art Metcalf, in Chattanooga, Tennessee. This relationship continued for approximately six months, at which time Metcalf was arrested for possessing a small quantity of marijuana.

Metcalf informed the police that he had recently obtained almost 26 pounds of marijuana, which had been fronted to him by Johnson, and which had been fronted to Johnson by Cowart. When Metcalf, because of his arrest, was unable to sell the marijuana and then pay Johnson, Johnson and Cowart decided to travel to Chattanooga to get the marijuana back. Johnson made the necessary arrangements with Metcalf, unaware that all the while, Metcalf was cooperating with federal authorities.

When Johnson and Cowart arrived in Chattanooga, the FBI was waiting for them. Johnson and Cowart met Metcalf at a predetermined location. Johnson exited the recreational vehicle in which he and Cowart had been travelling, while Cowart remained in-

Gregg L. Sullivan, Asst. U.S. Attorney (argued and briefed), Chattanooga, TN, for Plaintiff–Appellee.

Alan S. Percely (briefed), Houston, TX, Paul C. Nugent (argued), Foreman, DeGeurin & Nugent, Houston, TX, for Defendant–Appellant.

Before: MARTIN, JONES, and RYAN, Circuit Judges.

side. Johnson took the packages of marijuana from Metcalf, and threw them in the RV. When Johnson and Cowart then began to drive away, they were stopped and arrested. Johnson initially told the law enforcement officers that Cowart was unaware that they were going to pick up marijuana from Metcalf, and that he was only along for a ride to visit his sister; later, however, Johnson changed his story and told authorities of Cowart's complicity in the scheme. Cowart, however, maintained that he was unaware of Johnson's purpose in making the trip.

Cowart was indicted, along with Johnson and a third coconspirator, and was charged with one count of conspiring to distribute marijuana, in violation of 21 U.S.C. § 846, and with one count of possessing marijuana with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Cowart's codefendants pled guilty to the conspiracy charge.

About three months after the indictment was issued, Cowart was a passenger in a minivan in Florida that was stopped by a state trooper for failure to drive within a single lane. The officer smelled marijuana inside the van, and obtained consent to search. The search revealed more than 50 pounds of marijuana hidden inside the interior wall panels and in the backs of the seats. On this occasion, Cowart claimed that his passenger was unaware of the marijuana, and that the responsibility was solely his. He pled *nolo contendere* to the resulting charges.

Prior to trial in this case, the parties met with the district judge for a pretrial conference. During the conference, the judge asked the assistant U.S. attorney whether he anticipated introducing any evidence under Fed.R.Evid. 404(b). The AUSA acknowledged that he intended to introduce evidence of the Florida incident as probative of "motive," "absence of mistake," "knowledge and intent," and "the scope of his criminal activities." When asked by the district court to respond to the government's proffer, defense counsel initially, halfheartedly, pointed out that the incidents were five months apart, but readily agreed with the district court's observation that "that amount of time is not normally a problem." Defense counsel then went so far as to offer the following:

> I mean, he pled guilty to the charge [in Florida] and he's going to take the witness stand and he's guilty of what took place in Florida. My client's contention is that he, even though those events took place in Florida, that he is not guilty of it here.

When the district court then opined that the 404(b) evidence was "really not much of a problem," and that the government would, in any event, "be able to ask [Cowart] about it on cross," presumably meaning to refer to Fed.R.Evid. 609's impeachment provisions, defense counsel conceded that "[t]hat's why it's going to come out.... That's why I'm not howling and screaming[.]"

At trial, the government called as a witness the Florida state trooper who arrested Cowart in connection with the August 1993 incident in Florida. The trooper testified in great detail about the incident, without eliciting a single 404(b) objection from the defendant. Subsequently, the defendant himself took the stand, and he too testified in great detail, on direct examination, about the Florida incident. He attributed his participation in the Florida crime to being "financially distressed" and "mentally exhausted."

The jury returned a guilty verdict on both counts. Following the conviction, a probation officer prepared a presentence report containing a recommendation that Cowart be treated as a career offender, in light of three past convictions for bank robbery. Two convictions, in federal court, were based on Cowart's robbery of banks in Alamo Heights, Texas, on August 17, 1983, and San Antonio, Texas, on July 5, 1983. Cowart was indicted separately for these offenses, but sentenced simultaneously, following guilty pleas. The third conviction was a state court conviction for robbery of a bank on March 30, 1983, in Austin, Texas. These robberies were three of six robberies Cowart admitted to, all of which shared a similar *modus operandi*. Cowart would drive up to the bank's drive-through facility, and present a note to the teller demanding money and displaying a fake bomb when he did so. According to statements Cowart made to the probation officer who prepared the PSR for the feder-

ally prosecuted bank robberies, each robbery was a "spur of the moment" act. It appears that Cowart obtained more than $40,000 through these robberies, and that the robberies took place over a nine-month period.

Based on the career offender enhancement, Cowart's guidelines range was 210 to 240 months; the range otherwise would have been 100 to 137 months. At sentencing, Cowart objected to the career offender designation on the ground that the three robberies for which he was convicted were part of a common scheme or plan and, thus, under the sentencing guidelines, to be counted as a single crime. The district court rejected this argument, and sentenced Cowart to 210 months' imprisonment. Cowart then filed this timely appeal.

## II.

### A.

Cowart first argues that the district court "abused its discretion" in admitting evidence of the Florida incident under Fed.R.Evid. 404(b). This argument need not detain us long, for, as the government observes, the defendant waived this argument (1) by failing to object when the 404(b) evidence was discussed during the final pretrial hearing, and (2) by failing again to object when, two days later, the evidence was elicited at trial from the Florida trooper. As the government suggests, it appears that the stratagem behind the lack of an objection was to enable the defense to argue that since Cowart testified and readily admitted, on direct examination, his guilt of the Florida incident, he must have also testified truthfully when he denied his guilt with respect to the Tennessee incident for which he was on trial.

■ Generally, this court conducts a three-pronged review of a district court's admission of evidence of prior bad acts pursuant to Fed.R.Evid. 404(b). *United States v. Merriweather*, 78 F.3d 1070, 1074 (6th Cir. 1996); *United States v. Johnson*, 27 F.3d 1186, 1190 (6th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 910, 130 L.Ed.2d 792 (1995). This usual standard of review, however, is superseded when, as here, the complaining party failed to object to the evidence

in the district court. Our review under these circumstances is for plain error. *United States v. Cox*, 957 F.2d 264, 267 (6th Cir. 1992); *United States v. Mendez–Ortiz*, 810 F.2d 76, 78 (6th Cir.1986), *cert. denied*, 480 U.S. 922, 107 S.Ct. 1384, 94 L.Ed.2d 697 (1987); *see* Fed.R.Evid. 103(d). The plain error doctrine is to be used "only in exceptional circumstances" and only where the error is so plain that the trial judge was "derelict in countenancing it." *Cox*, 957 F.2d at 267.

■ Rule 404(b) provides in relevant part as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .

Fed.R.Evid. 404(b). "Under this rule, evidence of criminal character or propensity is excluded because the jury might convict the defendant for the conduct proving propensity rather than for the offense for which he is on trial. However, if the evidence is produced for a reason enumerated in the rule, it is admissible." *United States v. Acosta–Cazares*, 878 F.2d 945, 948 (6th Cir.) (citation omitted), *cert. denied*, 493 U.S. 899, 110 S.Ct. 255, 107 L.Ed.2d 204 (1989). In addition to showing that the particular 404(b) evidence is probative of the particular 404(b) purpose for which it is offered, it remains to be seen "whether such evidence, in the context of a given case, is more substantially prejudicial than probative." *Johnson*, 27 F.3d at 1192. In that regard, then, it is usually required that the district court "make an explicit finding on the probative value versus the prejudicial effect of the evidence." *Id.* at 1193. However, when "the defendant failed to request an on-the-record balancing," then "the court's failure to make an express finding on this issue" does not require reversal. *Acosta–Cazares*, 878 F.2d at 950.

■ Even if a district court's admission of 404(b) evidence is erroneous, it may be that the error is harmless. Thus, when there

**158**

is "no objection by the defendant[,] and [when] the properly admitted evidence of the defendant's guilt [is] overwhelming," a reversal on 404(b) grounds is inappropriate. *Merriweather*, 78 F.3d at 1075. "In determining whether an error is harmless, we 'must take account of what the error meant to [the jury], not singled out and standing alone, but in relation to all else that happened.'" *Id.* at 1079 (quoting *Kotteakos v. United States*, 328 U.S. 750, 764, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946)).

Because we decide this case based on the principles of waiver and harmless error, it is unnecessary to address the government's purported justifications for the admission of the 404(b) evidence. We nonetheless observe that rarely will an event that occurred subsequent to the charged crime be probative of motive, knowledge, or intent, the 404(b) purposes that the government asserts were in issue and of which the Florida incident was allegedly probative. *See United States v. Boyd*, 595 F.2d 120, 126 (3d Cir.1978); *see also United States v. Bakke*, 942 F.2d 977, 980–81 (6th Cir.1991); *United States v. Zelinka*, 862 F.2d 92, 99 (6th Cir.1988).

In any event, we conclude that Cowart should not be rewarded by pursuing one strategy at trial—testifying regarding the Florida incident in order to be able to argue that he admits when he is guilty, and, contrariwise, when he says he is not guilty he must truly not be guilty—and then allowing him to use his appeal rights to evade that strategy's ultimate failure. It is quite clear that the defendant made a fully informed decision not to object to the introduction of the 404(b) evidence because he desired to utilize it himself. Thus, not only did he fail to object, but he affirmatively compounded any error by testifying consistent with the evidence to which he now objects. Moreover, any error that may have resulted from allowing the government to elicit the complained-of testimony was harmless. As Cowart himself points out, the other evidence of his guilt is overwhelming. Accordingly, we reject Cowart's first assignment of error.

**B.**

Cowart next argues that the district court erred in sentencing him as a career offender. Under U.S.S.G. § 4B1.1, a defendant is deemed a "career offender"—subjecting him to a radically enhanced sentence—if he (1) "was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." That the first and second prongs of this guideline apply to Cowart is undisputed; the sole issue is whether, under the third prong, his prior violent felonies are properly deemed to have resulted in two prior convictions.

The commentary to section 4B1.1 advises that the phrase "two prior felony convictions" is defined in U.S.S.G. § 4B1.2. U.S.S.G. § 4B1.1, comment. (n. 1). Commentary to section 4B1.2 in turn refers the reader to section 4A1.2, where we learn that "[p]rior sentences imposed in unrelated cases are to be counted separately. Prior sentences imposed in related cases are to be treated as one sentence...." U.S.S.G. § 4A1.2(a)(2). The commentary instructs that a determination of relatedness hinges on three factors, the existence of any one of which requires a conclusion that the cases are related, and thus to be treated as only one conviction:

[P]rior sentences are considered related if they resulted from offenses that (1) occurred on the same occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing.

U.S.S.G. § 4A1.2, comment. (n. 3). Only the second prong is at issue here, and whether Cowart was properly sentenced as a career offender depends on whether his three bank robbery convictions were actually "part of a single common scheme or plan." If they were, then he is not a career offender.

At the outset, we note that the guidelines do not define the expression "common scheme or plan" in connection with the career offender provision. In connection with the relevant-conduct provision, however, the guidelines note that "[f]or two or more offenses to constitute part of a common scheme

or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar *modus operandi*." U.S.S.G. § 1B1.3, comment. (n. 9). This definition is certainly not binding for purposes of the career offender determination. *See United States v. Garcia,* 962 F.2d 479, 482 (5th Cir.), *cert. denied,* 506 U.S. 902, 113 S.Ct. 293, 121 L.Ed.2d 217 (1992). And because it is so clear that Cowart's three robberies do not constitute a "common scheme or plan" under any reasonable understanding of the career offender provision's use of that phrase, it is unnecessary today to address the extent to which the relevant-conduct language may be helpful or instructive.

Cowart advances two arguments. First, he argues that the three bank robberies of which he was convicted were "clearly part of a single scheme or plan" because, in each instance, he followed the same basic *modus operandi.* To that end, he asks, "How much more similar could the offenses be?" His second contention, advanced for the first time at oral argument, is that the burden of proof on the "single common scheme or plan" determination should be upon the government, and that here, the government produced insufficient evidence to meet its burden.

■ We will address the latter contention first. It is true that, as a general matter, the government bears the burden of proof with regard to the various penalties it seeks to have imposed under the sentencing guidelines. But it is equally true that, "[a]s a general matter, principles as to the allocation of burden of proof rest on goals and access. A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue." *United States v. Butler,* 970 F.2d 1017, 1026 (2d Cir.), *cert. denied,* 506 U.S. 980, 113 S.Ct. 480, 121 L.Ed.2d 386 (1992) (citing 9 J. Wigmore, *Evidence* §§ 2485–2486 (3d ed. 1940)). For that reason, we reject Cowart's contention that the government should have "the burden of proving that the acts underlying a defendant's prior unconsolidated convictions were not committed as part of a single common scheme or plan." *Id.*

The defendant must bear the burden in this regard, once the government has shown that the defendant has two prior convictions for crimes of violence or controlled substance offenses. As the *Butler* court observed, the single common scheme or plan determination at least partially "rests on elements that are subjective, and it is proper to place the burden of showing both (a) the existence of such a scheme or plan, and (b) the connection between the acts and the plan, on the party who has access to that information, *i.e.,* the defendant." *Id.; see United States v. Williams,* 905 F.2d 217, 218 (8th Cir.1990), *cert. denied,* 498 U.S. 1030, 111 S.Ct. 687, 112 L.Ed.2d 678 (1991); *cf. United States v. Ruo,* 943 F.2d 1274, 1276 (11th Cir.1991); *United States v. Gallman,* 907 F.2d 639, 643 (7th Cir.1990), *cert. denied,* 499 U.S. 908, 111 S.Ct. 1110, 113 L.Ed.2d 219 (1991). Thus, "[t]o the extent that the record is barren of evidence as to whether or not two predicate convictions were part of a single common scheme or plan, the court should conclude that the defendant has failed to carry his or her burden." *Butler,* 970 F.2d at 1027.

■ Cowart has offered a single rationale for why his prior convictions should be treated as a single common scheme or plan, namely, that the crimes shared a similar *modus operandi.* In other words, the appeal questions whether the district court properly construed the phrase "single common scheme or plan" under the guidelines, and our determination of relatedness requires that we resolve the scope of the "single common scheme or plan" language within the meaning of the guidelines. As these are legal questions, our review is *de novo. See United States v. Ford,* 996 F.2d 83, 85 (5th Cir.1993), *cert. denied,* 510 U.S. 1050, 114 S.Ct. 704, 126 L.Ed.2d 670 (1994); *United States v. Taylor,* 984 F.2d 298, 300 (9th Cir.1993); *United States v. Lopez,* 961 F.2d 384, 385 (2d Cir. 1992). On other occasions, the question of whether conduct constitutes part of a common scheme or plan will present a mixed question of fact and law, in which the factual findings would be subject to review only for clear error. Cowart's appeal, however, presents no factual disputes for us to resolve.

It is beyond question that the simple sharing of a *modus operandi* cannot alone convert three separate bank robberies on three different dates of three different banks into one offense by virtue of their being a single common scheme or plan. *See United States v. Chapnick,* 963 F.2d 224, 227 (9th Cir.1992); *see also United States v. Houser,* 929 F.2d 1369, 1374 (9th Cir.1990); *United States v. Davis,* 922 F.2d 1385, 1390 (9th Cir.1991). Indeed, the majority of circuits that have addressed the question would not even take the similarity into account. *See United States v. Garcia,* 962 F.2d 479, 482 (5th Cir.), *cert. denied,* 506 U.S. 902, 113 S.Ct. 293, 121 L.Ed.2d 217 (1992); *see also Butler,* 970 F.2d at 1024. The defendant offers no other justification, other than the similarity of the crimes, for why the three crimes should be treated as related. As the district court found, the robberies occurred on different dates in different towns and resulted in sentences by different judges in different courts. These findings are ample support for the legal conclusion that the robberies were not part of a common scheme or plan, and there is no other evidence in the record to suggest that these crimes were otherwise "related."

### III.

We **AFFIRM.**