**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Juan Carlos ARBELAEZ–AGUDELO,
Defendant–Appellant.**

No. 99–2105.

United States Court of Appeals,
Sixth Circuit.

Aug. 27, 2001.

Before GUY and MOORE, Circuit Judges; and HULL, District Judge.*

PER CURIAM.

Defendant, Juan Carlos Arbelaez–Agudelo, appeals his conviction and sentence on one count of conspiracy to possess with intent to distribute and to distribute more than five kilograms of cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(ii). Seeking a new trial, defendant challenges the admission of evidence concerning (1) the involvement by several coconspirators in the murder of a former distributor; and (2) the defendant's delivery of some emeralds from one conspirator to another. Defendant also appeals from the denial of a two-point reduction in his base offense level for his role in the offense. *See* U.S. SENTENCING GUIDELINES MANUAL (USSG) § 3B1.2 (1998). After review of the record, we find no error and affirm.

---

* The Honorable Thomas G. Hull, United States District Judge for the Eastern District of Tennessee, sitting by designation.

## I.

The indictment alleged that from January 1993 until October 1996, defendant conspired with Brian Chase, Raymond Kelsey, "Andy" Burke, and others to possess with intent to distribute and to distribute cocaine. An unindicted coconspirator and defendant's brother, William Arbelaez, supplied the cocaine for the conspiracy.[1] William Arbelaez became acquainted with Chase and Kelsey while they served time together in federal prison during the 1980s.

In 1991 or 1992, William Arbelaez contacted Chase, who lived in the Detroit area, and asked if he would be interested in selling drugs. Chase thought he could sell cocaine through his contacts with a motorcycle gang called the Avengers and agreed. William gave Chase one kilogram of cocaine and, when that was sold, brought him 50 kilograms of cocaine. Chase distributed some of it through David Moore and Ward Wright, who were members of the Avengers. The rest was sold to William's existing customers. Near the end of 1992, William provided Chase with another 50 kilograms of cocaine.

After this delivery, William was arrested in New Mexico while trying to bring approximately 40 kilograms of cocaine into the United States. From prison, William arranged for defendant to live with Chase for several months. Defendant and Chase purchased a car, which defendant drove to New Mexico to help William escape. Defendant was unable to get to the rendezvous point, but William nonetheless escaped. Chase contacted Kelsey, who was an experienced pilot, and arranged for him to fly William to the border so he could meet a flight that would take him to Columbia.

In 1993, William resumed supplying cocaine. This is the period covered by the indictment. Kelsey flew to Los Angeles, retrieved a 50–kilogram shipment of cocaine, and delivered it to Chase. Later, Kelsey flew Chase and half of the proceeds of this shipment to New York and delivered it to another of William's brothers, Baldo Arbelaez. Kelsey picked up the next shipment of 100 kilograms, brought 25 kilograms to Chase, and delivered the rest to Baldo. Having decided to cheat William, Chase and Kelsey told him that Canadian officials had confiscated the 25 kilograms. Shortly after that, Kelsey flew Chase to New York to deliver the rest of the proceeds of the earlier shipment. Baldo failed to meet them, however, which caused them to refuse to deal with Baldo again. As a result, William arranged for them to deliver the money, about $500,000, to the defendant. Defendant met them at the airport in New Smyrna Beach, Florida, and took the money.

The next shipment of cocaine was only 66 kilograms; less than the 75 kilograms they had expected. William demanded that Kelsey deliver it to defendant in New York, but Kelsey and Chase distributed it in Detroit anyway. Chase then drove the proceeds of this shipment, about $1.6 million, to New York where he gave it to defendant in a hotel parking lot. Defendant left quickly, telling them that "the people in New York" were really anxious about the money because it was late.

When the "short" shipment arrived in Detroit, David Moore had stopped distributing cocaine for the conspiracy. Moore introduced Chase to his customer, who took over the distribution. When Moore demanded a commission for those sales, Chase refused. As a result of this dispute, Chase believed that Moore intended to

---

1. Despite the evidence at trial, defendant maintained that William was not his brother.

shoot him or might go to the authorities. Chase and Kelsey decided to kill Moore. They paid Ward Wright to kill Moore, which he did in July 1993. Both Chase and Kelsey pleaded guilty to federal murder-for-hire charges.

William Arbelaez devised a plan to make up for the 25 kilograms of "lost" cocaine by stealing airplanes to use for transporting cocaine from Columbia. Two airplanes were stolen and flown to Columbia. There was no evidence that defendant was involved in the thefts, however. In late October, a few weeks after the second airplane was stolen, William arranged for another shipment of cocaine. He told Chase that defendant would meet them in Texas this time and would travel with them to Michigan. Chase and Kelsey met defendant in El Paso, Texas. Defendant, who was using the name Torres, called the contact person. When the cocaine still was not ready for shipment three days later, they left Texas.

Another week later, Chase learned that the shipment was finally ready and called Kelsey. Kelsey paged defendant and they flew together from Florida to Texas on November 11, 1994. Once in El Paso, defendant called the contact person and arranged the delivery. Defendant and Kelsey received 98 kilograms of cocaine, loaded it on the airplane, and departed for Michigan. After an overnight stop in Kansas, they arrived in Marine City, Michigan, where defendant unloaded the cocaine for Chase. The next morning, Chase paid defendant $20,000 and took him to the airport to catch a flight to Chicago. Defendant returned a few weeks later to collect the proceeds of the shipment. Lying to him, Chase and Kelsey said the cocaine had not yet been sold and gave him another $20,000. Kelsey then drove defendant to Chicago and gave him a piece of paper on which he had written a false address in Michigan that was to be their future contact point. Kelsey and Chase had no involvement with defendant after November 1994.

Defendant was arrested in September 1995 at the Chicago airport where he had arrived from California with a suitcase containing 26 kilograms of cocaine. Defendant, traveling under the name Torres, had in his possession the piece of paper that Kelsey had given him. As a result of this arrest, defendant was sentenced to 39 months' imprisonment.

In July 1998, defendant and several co-conspirators were indicted in this case. Chase and Kelsey testified against defendant at trial, and he was convicted. At sentencing, the district court denied defendant's request for a reduction in his offense level for his role in the offense. In addition, defendant objected to the recommendation that he be held responsible for more than 150 kilograms of cocaine distributed by the conspiracy. The district judge found overwhelming evidence of defendant's direct involvement in the distribution of the 98 kilograms of cocaine and used that quantity to calculate defendant's base offense level. Defendant was sentenced within the guideline range to a term of 236 months' imprisonment. This appeal followed.[2]

---

**2.** Although not raised in the brief filed by counsel, defendant attempts to raise an *Apprendi* issue by filing a *pro se* supplemental citation of authorities. *See Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). We normally decline to consider issues that are not raised in the appellant's opening brief as is required by Fed. R.App. P. 28(a). *See United States v. Brown*, 151 F.3d 476, 487 (6th Cir.1998). Even if properly raised on appeal, defendant's failure to object at trial would restrict our review to "plain error." *United States v. Page*, 232 F.3d 536, 543–44 (6th Cir.2000),

## II.

### A. Admission of Evidence

Defendant claims he is entitled to a new trial because he was unfairly prejudiced by the admission of certain evidence. In reviewing the question of unfair prejudice under Fed.R.Evid. 403, " 'we must look at the evidence in a light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect.' " *United States v. Kelley*, 849 F.2d 999, 1003 (6th Cir.1988) (quoting *United States v. Brady*, 595 F.2d 359, 361 (6th Cir.1979)). Although defendant objected to the evidence at trial, the objections were not made on the grounds of prejudice. As a result, our review is limited to whether there was plain error. *See United States v. Cox*, 957 F.2d 264, 267 (6th Cir.1992).

### 1. Moore's Murder

Challenging the testimony by Chase concerning Moore's murder, defendant argues that he was not involved in the transactions between Chase and his customers, and the decision to kill Moore was "more of a personal matter" that had nothing to do with furthering the conspiracy. The evidence, however, was that the murder resulted from a dispute over commissions on the sale of cocaine distributed by the conspiracy. While defendant was not involved in Chase's distribution operation or in planning or carrying out the murder, it was committed by defendant's conspirators during and in furtherance of the charged conspiracy.

On appeal, defendant seems to argue that this testimony was evidence of other crimes or wrongs that should have been excluded under Fed.R.Evid. 404(b). *See United States v. Dunn*, 805 F.2d 1275, 1280 (6th Cir.1986). On the contrary, "Rule 404(b) is not implicated when the other crimes or wrongs evidence is part of a continuing pattern of illegal activity." *United States v. Barnes*, 49 F.3d 1144, 1149 (6th Cir.1995). Bad acts by other participants in a common scheme are admissible "as long as they constitute part of the same criminal episode, whether or not a conspiracy is charged, and as long as independent evidence ties the defendant to that scheme." *United States v. Toney*, 161 F.3d 404, 413–14 (6th Cir.1998).

█ Moreover, rather than creating unfair prejudice against the defendant, the evidence was used against the government's witnesses. Defense counsel argued both in his opening statement and closing argument that Chase and Kelsey should not be believed, at least in part, because of their participation in Moore's murder. Predictably, defendant attempted to impeach both Chase and Kelsey on cross-examination with their murder-for-hire convictions. To lessen the impact of this impeachment, the government elicited the testimony from Chase on direct examination. In addition, the government took care to remind the jury during its closing argument that the defendant was not involved in the murder. For these reasons, we find no error and certainly no plain error resulted from the admission of evi-

cert. denied, —— U.S. ——, 121 S.Ct. 2202, 149 L.Ed.2d 1032 (2001). Nonetheless, it is clear from the record that there is no *Apprendi* problem in this case. In *Apprendi*, the Court held that: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. Completely independent of

the quantity of cocaine involved, defendant's conspiracy conviction carries a maximum statutory penalty of not more than 20 years' imprisonment (240 months) and at least three years of supervised release. *See* 21 U.S.C. § 841(b)(1)(C). Since defendant's sentence of 236 months' imprisonment and five years of supervised release does not exceed the allowable statutory maximum, the constitutional rule articulated in *Apprendi* was not violated.

dence concerning the murder of Moore. *See United States v. Thomas*, 11 F.3d 620 (6th Cir.1993) (discussing plain error standard).

### 2. Delivery of Emeralds

Chase testified that he met the defendant once between the delivery of cash to him in Florida in 1993 and the shipment of 98 kilograms of cocaine in November 1994. Asked about that meeting, Chase explained that he had arranged to purchase emeralds from William Arbelaez and had given Kelsey $20,000 to make the purchase in Columbia. The emeralds Kelsey returned with, however, were worth only $3,000. Chase complained to William, who promised to "make it right." It was the defendant who brought Chase the delivery of emeralds to make up the difference. Chase testified that this transaction was not part of the cocaine conspiracy.

■ Defendant argues that the testimony concerning this unrelated transaction unfairly prejudiced his chance of acquittal on the drug charges because it furthered suspicion that those involved in drug activities spend huge amounts of money on jewelry. We disagree. The danger of unfair prejudice was minimal since Chase had admitted his significant involvement in the conspiracy to distribute cocaine. Also, the evidence was relevant to defendant's claim of mistaken identity and his denial of any connection to William Arbelaez. Maximizing its probative value and minimizing its prejudicial effect, as we must, we find the testimony was not unfairly prejudicial. The district court did not abuse its discretion in admitting this testimony and, therefore, defendant cannot demonstrate plain error.

### B. Minor Participant Reduction under § 3B1.2(b)

Defendant contends that he should have received a two-point reduction in his of-

fense level under USSG § 3B1.2(b) for being a "minor participant" in the offense. A "minor participant" is one who is "less culpable than most other participants." USSG § 3B1.2, cmt. n. 3. In addition, an adjustment under § 3B1.2 is not appropriate in the absence of a finding that the defendant was "substantially less culpable than the average participant." *Id.* at cmt. background. This determination is one that depends heavily on the facts and is an issue on which the defendant bears the burden of proof by a preponderance of the evidence. *See United States v. Owusu*, 199 F.3d 329, 337 (6th Cir.2000); *United States v. Miller*, 56 F.3d 719, 720 (6th Cir.1995). We review the district court's determination as to the defendant's role in the offense for clear error. *See Miller*, 56 F.3d at 720.

In denying the requested adjustment, the district court found that the defendant was a "very significant participant" in the conspiracy with respect to both the 98 kilograms of cocaine and the collection of nearly $2 million in proceeds from other shipments. Without disputing this finding, defendant claims he was entitled to a mitigating role adjustment because he was not involved in the murder-for-hire scheme, the airplane thefts, or the transportation of several large shipments of cocaine. He also relies on the fact that another conspirator who worked for Chase received the adjustment.

Although defendant compares his activities with those of the conspiracy as a whole, this is not the proper inquiry. Rather, as we have held on several occasions, a defendant's role for purposes of this adjustment must be determined in relation to the activity for which he is held accountable. *See United States v. Roberts*, 223 F.3d 377, 380–81 (6th Cir.2000) (citing

cases). When a defendant's base offense level does not reflect the conduct of the larger conspiracy, his culpability must be determined from the relevant conduct attributed to him and in relation to the other participants in that relevant conduct. *Id.* at 381. *See also United States v.. Salgado,* 250 F.3d 438, 458 (6th Cir.2001), *petition for cert. filed,* 70 U.S.L.W. 3242 (U.S. July 17, 2001) (No. 01–5327).

■ In this case, the offense level was based only on the defendant's direct involvement in the transportation of the 98 kilograms of cocaine from Texas to Michigan. With respect to that conduct, defendant represented the supplier; made the contacts and arranged for delivery of the cocaine in Texas; traveled with his coconspirators to Michigan; and returned at a later date to collect the proceeds. The fact that others plan the activities of the conspiracy does not make the defendant a minor participant. *See Miller,* 56 F.3d at 720. Nor is a defendant entitled to a mitigating role adjustment when his participation is indispensable to carrying out the conspiracy. *See United States v. Latouf,* 132 F.3d 320, 322 (6th Cir.1997). While defendant may not have been the most culpable, he was not a minor participant with respect to the distribution of the 98 kilograms of cocaine. We are convinced that the district court did not clearly err in denying a reduction to defendant for his role in the offense.

AFFIRMED.