**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Keith T. ECHOLS and Claude**
**E. English, Defendants–**
**Appellees.**

Nos. 02–5626, 02–5627.

United States Court of Appeals,
Sixth Circuit.

Dec. 5, 2003.

Tony R. Arvin, Asst. U.S. Attorney, U.S. Attorney's Office, Memphis, TN, for Plaintiff–Appellee.

Keith T. Echols, pro se, Robert C. Brooks, Gregory C. Krog, Jr., Memphis, TN, for Defendants–Appellants.

Before DAUGHTREY and GILMAN, Circuit Judges, and HAYNES,* District Judge.

* The Honorable William J. Haynes, United States District Court for the Middle District of Tennessee, sitting by designation.

PER CURIAM.

The defendants, Keith Echols and Claude English, were convicted of committing armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (d). In addition, Echols was convicted of using and carrying a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c), an offense of which English was acquitted. On appeal, Echols contends (1) that the district court should have suppressed evidence found in the car in which he was riding, because the police did not have reasonable suspicion to stop the car, and (2) that the district court should not have included the value of personal property taken during the robbery in calculating loss under the sentencing guidelines.[1] English contends (3) that the district court erred in allowing testimony that he had previously been seen with a gun, (4) that there was insufficient evidence to support his conviction because it was based on the uncorroborated testimony of accomplices, and (5) that the district court erred in not giving jury instructions with sufficient warnings about accomplice testimony. We find no reversible error and affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

The bank robbery in this case occurred at approximately 10:30 a.m. at a South-Trust Bank in Memphis, Tennessee. The robbers left with $5,090 in cash, a diamond ring appraised at $6,560 that was taken off the finger of one of the bank tellers, and a straw purse belonging to another teller that, together with its contents, was valued at $483. The robbers also left with a number of bait bills and some exploding dye packs that had been mixed in with the bank's money. Soon after, the police found the getaway car, a silver Impala, abandoned near the bank, with signs that a dye pack had exploded in it.

At 12:20 p.m. that day, less than two hours after the robbery, an employee staffing the Memphis Police Crime Stoppers phone line received an anonymous call reporting that three or four suspects had just robbed a bank and were counting money in the Maple Ridge Apartments. According to the information sheet used in receiving the tip, the caller said the building number was either 3368 or 3362—it is unclear from the information sheet whether both numbers were given, or whether they were both written down by mistake—and the caller specified that the apartment was upstairs to the left. The caller reported that the suspects would be gone if the police waited too long to respond and that they might be driving a red 2000 Pontiac Grand Am. Police officers who responded to the call went to the apartment complex and drove around until they saw a red vehicle matching the description in the Crime Stoppers report being driven from a building matching one of the numbers given in the report. They followed the red car—it was actually a Pontiac Grand Prix, rather than a Grand Am—and saw it stop beside a white Cadillac. Two of the people in the red car got out and entered the Cadillac. One officer followed and stopped the Grand Prix, while another officer stopped the Cadillac. They found weapons and wet, dye-stained money in both cars.

Nicholas Williams, one of the passengers in the Cadillac, gave a statement to police that night and a second statement the next

---

1. Echols also filed an additional brief *pro se,* arguing that the United States Attorney and defense counsel aided government witnesses in committing perjury and thereby committed fraud on the court, and that by not exposing the lies to the court his trial and appellate counsel were ineffective. There is not sufficient evidence in the record to support either of these charges.

day. Though the two statements differed slightly, in both he implicated himself, Keith Echols, Claude English, and Tarus Bean in the robbery at the SouthTrust Bank. Williams, Echols, and Bean were arrested immediately as a result. Claude English, who had not been in either of the cars stopped by police, was eventually arrested in Manteno, Illinois, six weeks after the SouthTrust robbery and after initially denying to the police that his name was Claude English (he instead used his middle name, Edward). All four were indicted for armed bank robbery and carrying a weapon in relation to a crime of violence.

Following indictment, Tarus Bean pleaded guilty to both counts of the indictment, and Nicholas Williams pleaded guilty to the bank robbery charge. The remaining two co-defendants went to trial, at which Williams and Bean testified that they had robbed the bank with Echols and English, and that after they left the bank, one of the dye packs hidden in the money exploded, necessitating a trip to Walgreen's to buy a bucket and nail polish remover in order to clean the stolen cash. As a corollary to this testimony, Williams and Bean identified Echols and English in photographs taken by the bank's surveillance camera, and Williams identified Echols from photographs taken by a Walgreen's surveillance camera. Bean and Williams said that they, Echols, and English then went to Chris McRee's apartment in the Maple Ridge Apartments, where they washed the money and divided it up. McCree also testified at trial, describing how the four men had cleaned the cash at his apartment and indicating that he had bought additional nail polish remover for them.

The jury found Echols guilty of both the robbery and the weapons charge. English, who was not in possession of a firearm at the time of his arrest, was convict-ed only on the robbery count. After a sentencing hearing, the district court sentenced Echols to 175 months imprisonment and English to 300 months imprisonment.

## II. DISCUSSION

### A. Reasonable Suspicion

Echols contends that the district court erred in finding that there was reasonable suspicion for the police to stop the Cadillac in which he had been riding on the afternoon of the robbery and in denying his motion to suppress the evidence obtained during that stop. However, Echols did not file any objections to the magistrate judge's report and recommendation that his motion to suppress be denied. Under Sixth Circuit precedent, a defendant waives the right to appeal the district court's order affirming the report of the magistrate judge unless there is a timely objection to the findings in the report. *See United States v. Campbell,* 261 F.3d 628, 632 (6th Cir.2001); *United States v. Walters,* 638 F.2d 947, 949–50 (6th Cir. 1981); *see also Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985) (affirming constitutionality of Sixth Circuit rule). Defense counsel conceded at oral argument of this appeal that the issue could, at most, be reviewed for plain error. Actually, we have held that the waiver rule should be followed except "where the district court's error is so egregious that failure to permit appellate review would work a miscarriage of justice." *United States v. 1184 Drycreek Road,* 174 F.3d 720, 725–26 (6th Cir.1999). No such "egregious error" is apparent here.

█ As defense counsel concedes, the stop of the Cadillac in which Echols was riding was valid if based on reasonable suspicion. *United States v. Arvizu,* 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). In this case, the officers' action was based solely on the anonymous

Crime Stoppers tip. Echols argues that both the content of information conveyed by the tip and the reliability of that information must be considered in determining whether it created reasonable suspicion, relying upon *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). But in that case the Supreme Court held that reasonable suspicion can be based on an anonymous tip if the tip has been corroborated, principally upon the basis of predicted behavior. *Id.* at 332. In this case, the future conduct described by the tipster was that the four occupants of the described apartment would be leaving shortly in a red Pontiac. That prediction was not only proven to be true by subsequent conduct, but the tipster's specific information that the suspects were cleaning red dye from cash taken in a robbery only a short time earlier that day also gave credence to the information above and beyond its predictive value. The district court's determination that the stop of the Cadillac based on the officers' corroboration of the information received from the Crime Stoppers' call was valid simply cannot be said to be plain error. Indeed, we hold that the stop was based on reasonable suspicion and that the failure to suppress evidence seized as the result of that stop was not error, plain or otherwise.

**B. Loss Calculation under the Sentencing Guidelines**

 Echols objects to having received a one-level increase under United States Sentencing Guideline § 2B3.1(b)(7)(B), which provides for such an increase if the loss exceeded $10,000. After the robbery, the bank determined that it had sustained a loss of $6,573—$5,090 in cash and $1,483 in reimbursements to employees. In addition, one of the tellers sustained a loss $5,560—the value of a ring of hers that was stolen minus the $1,000 the bank reimbursed her towards the value of the ring.

Echols argues that the value of the ring should not have been included in calculating the total loss.

Under U.S.S.G. § 1B1.3, what constitutes relevant conduct for the purpose of determining the applicable sentencing guideline range includes acts of the defendant "that occurred during the commission of the offense of conviction." The theft of the ring clearly occurred during the commission of the bank robbery. Echols nevertheless contends that because the proof did not show that he was the one who stole the ring, he should not be held responsible for the act. However, U.S.S.G. § 1B1.3(a)(1)(B) provides that "in the case of a jointly undertaken criminal activity" relevant conduct includes "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity."

We review for clear error a district court's conclusion that acts by others in a jointly undertaken criminal activity are reasonably foreseeable and in furtherance of the jointly undertaken criminal activity. *See United States v. Tocco*, 306 F.3d 279, 284 (6th Cir.2002). In this case, we conclude that the district court did not commit clear error in finding that the theft of the ring was in furtherance of the jointly undertaken criminal activity and that the theft was reasonably foreseeable by participants in the robbery.

**C. Evidence of Prior Bad Acts**

 English argues that the district court erred in not acting, *sua sponte*, to strike testimony by Chris McRee that he had once seen English in possession of a pistol, on the ground that the statement was introduced by the government in clear violation of Federal Rule of Evidence 404(b). The major hurdle to relief on this basis is the fact that defense counsel did

not object to either the question posed by the prosecutor or to the witness's response. The error, if there was one, can therefore be reviewed only to determine whether, under such authority as *United States v. Cowart*, 90 F.3d 154, 157 (6th Cir.1996), it was plain error "that affect[ed] the defendant's substantial rights" and "seriously affect[ed] the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Brown*, 332 F.3d 363, 370 (6th Cir.2003) (internal quotation marks and citations omitted).

In the absence of any demonstration that the testimony in question affected the defendant's substantial rights, we find no plain error. McRee and other witnesses testified that English possessed a gun on the day in question, substantially limiting the impact of a brief acknowledgment that he had been seen in possession of a weapon on some earlier, unspecified occasion. Furthermore, any argument that McRee's statement was unfairly prejudicial is thoroughly undercut by the fact that the jury acquitted this defendant on the weapons charge that constituted the second count of the indictment.

## D. Sufficiency of the Evidence

■ English next claims that the evidence at trial was insufficient to prove his guilt, because it consisted largely of accomplice testimony that was, in some respects, inconsistent with their former statements and with the testimony of bank employees. He argues that the inconsistencies make the accomplices' testimony "too insubstantial to support the jury's verdict." The existence of inconsistency, however, is relevant to the credibility of the witnesses and to the weight to be given their testimony and not to the sufficiency of the evidence. As we noted about a similar contention, the "argument here is merely a challenge to [the witness's] credibility, packaged as an insufficiency of the evidence claim." *United States v. Talley*, 164 F.3d 989, 996, (6th Cir.1999).

Nor are we willing to embrace the defendant's theory that we should adopt a new rule requiring that accomplice testimony be corroborated, in contradiction to well-established Sixth Circuit precedent that "uncorroborated testimony of an accomplice may support a conviction under federal law." *United States v. Frost*, 914 F.2d 756, 762 (6th Cir.1990) (quoting *United States v. Gallo*, 763 F.2d 1504, 1518 (6th Cir.1985)); *see also, e.g., Poliafico v. United States*, 237 F.2d 97, 115 (6th Cir.1956) (citations omitted). In short, there is no merit to defendant English's sufficiency claim.

## E. The Jury Instructions

■ English next argues that the jury instructions failed properly to convey to jurors the skepticism with which they should view accomplice testimony. Again, however, there was no contemporaneous objection to the instructions, and they can be reviewed on appeal only for the existence of plain error resulting in a denial of the defendant's substantial rights. And, again, we find no such error. The instructions in this case warned the jury that accomplice testimony is to be considered "with caution" and "great care"; indicated that the defendant could not be convicted based on unsupported accomplice testimony unless the jury concluded that it was credible beyond a reasonable doubt; informed the jury that Bean and Williams had entered plea agreements that gave them reduced sentences or charges; and explained that the testimony of witnesses who hope to benefit from their co-operation with the government should be considered with "more caution" than testimony by other witnesses. In short, the instructions contained warnings similar to those

outlined in Sixth Circuit Pattern Instruction 7.08. We therefore conclude that the district court did not err in its instructions to the jury on how to receive the accomplice testimony. Certainly, we cannot say that plain error resulted because the district court failed to charge that the testimony should be viewed "with skepticism" instead of "with caution."

## CONCLUSION

For the reasons set out above, we find no reversible error in connection with either the convictions of or the sentences imposed on the two defendants in this case, and we therefore AFFIRM the judgment of the district court in all respects.