NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0100n.06
Filed: February 10, 2005

CASE NO. 04-5119
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | **APPEAL FROM THE UNITED** |
| | ) | **STATES DISTRICT COURT FOR** |
| v. | ) | **THE WESTERN DISTRICT OF** |
| | ) | **TENNESSEE** |
| JIMMIE LARRY, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE:    SILER and CLAY, Circuit Judges; BERTELSMAN,[1] District Judge.

**BERTELSMAN,** District Judge.   Defendant Jimmie Larry appeals from a conviction for being a felon in possession of a firearm in violation of 18 U.S.C. § 922 (g).  Larry argues that the district court erred in denying his motion to suppress evidence and in formulating a cautionary instruction given to the jury.  For the reasons that follow, we **AFFIRM** Larry's conviction.

I.

On June 27, 2002, detectives with the Vice Narcotics Unit of the Memphis Police Department received a complaint that narcotics were being sold at 934 N. Hollywood in Memphis, Tennessee.  Detectives went to that address and walked up to the front screen door.  Detective Mark Lucas testified that, from the porch, he saw Jimmie Larry in the kitchen handing what appeared to be a bag of marijuana to Allisha Smith.  After observing this transfer, Detective Lucas knocked on

---

[1]The Hon. William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

the door. Larry turned, saw Detective Lucas, and ran out the back door carrying the bag of marijuana.

Detective Lucas then entered the house and chased Larry out the back door. Ignoring the detective's orders to stop, Larry continued fleeing, dumping the contents of the bag as he ran. The chase ended when Larry dove to the ground and was apprehended by another officer. Larry then told the officers that he wanted them to secure the apartment because his girlfriend was sleeping inside, and that there was a gun under the mattress in that bedroom.

Officers entered the apartment and retrieved a gun from under the mattress in the bedroom. Larry was taken to the hospital for treatment for a cut on his chin and then taken to jail. During his interviewing and processing, Larry waived his *Miranda* rights, signed a form indicating that he understood those rights, and signed a statement admitting ownership of the weapon.

Larry filed a motion to suppress, and the district court held an evidentiary hearing on January 23, 2003. In his motion to suppress, Larry argued that his arrest was without probable cause and that his statements to the officers were involuntary. The motion did not challenge the legality of the search of the apartment that led to retrieval of the gun. The district court denied the motion to suppress and, following a trial, a jury convicted Larry on July 15, 2003.

Larry's mother, Johnnie Larry, testified that the apartment at 934 N. Hollywood is her residence. At the suppression hearing, Ms. Larry stated that Jimmie was at her residence on the day of the arrest with her permission. At trial, however, she stated that he was not permitted to be in her home when she was not present. Ms. Larry also stated that Jimmie rarely made social visits to her home and only came when she called him to do something. Moreover, she stated that he was never an overnight guest. Contrary to Detective Lucas's statement, Ms. Larry also testified that someone

2

standing on her front porch would be unable to see through to the kitchen. She also stated that the gun belonged to her and she was the one who placed it under the mattress.

According to Jimmie Larry's testimony, he lives at 3205 Jackson in Memphis. Larry's mother, his friend Ms. Smith, and his girlfriend Ms. Allen also testified to that fact. Ms. Allen testified that Larry has lived at 3205 Jackson with her for four years, helps with the bills, and keeps all of his personal belongings there.

Ms. Allen further testified that, on the day in question, she had gone to 934 N. Hollywood to meet Larry. She testified that she had been sleeping, did not hear anyone consent to the search of the premises, and was awakened by the officers retrieving the gun.

During the trial, the government provided proof from five detectives of the Vice Narcotics Unit who testified consistently with the above facts. Special Agent Alan Oxley of the Bureau of Alcohol, Tobacco, and Firearms testified that the weapon had previously traveled in interstate commerce. Larry stipulated that he had previously been convicted of a crime punishable by imprisonment for a term exceeding a year.

Before the government presented any proof at trial, defense counsel requested a cautionary instruction with respect to the evidence of the marijuana transaction in which Larry was engaged when he was first seen by the officers. The court ultimately gave the jury an instruction informing them that Larry was charged only with the illegal possession of a firearm and not with any drug offense. The court further instructed the jury that it could not consider evidence of the drug transaction "as evidence that the defendant committed the crime that he is on trial for now" and that "[i]nstead, you can only consider it in deciding whether the defendant had any intent to commit the crime."

**A.** *Standard of Review*

"We review for clear error the district court's findings of fact made with regard to a motion to suppress; we review de novo the court's legal conclusions." *United States v. Malveaux*, 350 F.3d 555, 557 (6th Cir. 2003) (citation omitted).

**B.** *Alleged Unlawful Search*

"Constitutional objections 'that appear for the first time on appeal are conclusively deemed to be waived, with the effect that [the appellate court] is deprived of jurisdiction.'" *United States v. Scarborough*, 43 F.3d 1021, 1025 (6th Cir. 1994). FED. R. CRIM. P. 12(b)(3)(E) states that such objections must be raised prior to trial or are deemed waived. Rule 12(f) states that a party's failure to make motions which must be made prior to trial "shall constitute waiver of the objection" that should have been raised in such a motion. *United States v. Obiukwu*, 17 F.3d 816, 820 (6th Cir. 1994).

Under FED. R. CRIM. P. 52(b), however, purely legal issues affecting substantial rights may be raised although they were not brought to the attention of the trial court. Rule 52(b) states that there must be a finding of "plain error that affects substantial rights"; if so, the court then decides whether there has been serious effect upon the fairness, integrity or public reputation of judicial proceedings. *United States v. Buchanon*, 72 F.3d 1217, 1227 (6th Cir. 1995).

Larry does not dispute that he did not challenge the legality of the search during proceedings in the trial court. He argues, however, that this issue is nonetheless reviewable under the plain error doctrine, relying on *Buchanon*.

Larry's reliance on *Buchanon* is misplaced. There, two co-defendants were convicted of

various drug and firearm offenses. The defendants moved to suppress evidence resulting from the search and seizures, although each defendant invoked different aspects of the Fourth Amendment. *Buchanon*, 72 F.3d at 1218. Only defendant Reed, and not Buchanon, argued with specificity in his motion to suppress that a seizure occurring prior to a dog sniff was illegal. *Id.* at 1226-27. On appeal, this court reviewed Buchanon's pre-sniff seizure argument under the plain error test, concluding that the district court "had the opportunity to fully consider the seizure issue as it pertained to both defendants, even though Buchanon did not raise the issue, because Buchanon and Reed were treated identically by the troopers." *Id.* at 1227-28.

Here, the illegal search argument Larry raises on appeal was not presented below in any form, and the district court thus had no opportunity to consider it. *Buchanon* thus does not aid Larry.

Moreover, even assuming that this issue had not been waived, Larry does not have standing to challenge the search of his mother's home. To have standing to challenge a warrantless search, a person must have a legitimate expectation of privacy. *United States v. Knox*, 839 F.2d 285, 293 (6th Cir. 1988) (citing *Katz v. United States*, 389 U.S. 347 (1967)). A legitimate expectation of privacy incorporates two elements: first, whether the defendant exhibited an actual (subjective) expectation of privacy, and second, whether the defendant's subjective expectation is "one that society is prepared to recognize as reasonable." *Id.* (citation omitted). A defendant bears the burden of showing that there was a reasonable expectation of privacy in the item or area searched. *Rakas v. Illinois*, 439 U.S. 128, 130 n. 1 (1978).

Testimony from various witnesses in this matter established that Jimmie Larry did not live at 934 N. Hollywood. His mother testified at trial that he was not an overnight guest nor a permitted social visitor on the day in question. In fact, she testified that Larry was supposed to stay outside

5

of her apartment when she was not home. Therefore, Larry failed to show he had an actual and subjective expectation of privacy in his mother's home, because he was aware that she did not permit him there. *See Knox*, 839 F.2d at 293 ("When a defendant is aggrieved by an allegedly illegal search of a third party's property, the Fourth Amendment rights of *that* defendant have not been infringed.") (citation omitted).

Moreover, the officers could reasonably have inferred from Larry's request that they secure the apartment his implied consent to their entrance into the residence. *See United States v. Griffin*, 530 F.2d 739, 742-44 (7th Cir. 1976); *Robbins v. MacKenzie*, 364 F.2d 45, 48-49 (1st Cir. 1966); *United States v. Tragash*, 691 F. Supp. 1066, 1072 (S.D. Ohio 1988). Once inside, the officers secured the gun that Larry had told them was there and conducted no further "search." Under these circumstances, we find the officers' conduct to be constitutional. *See United States v. Biggs*, 70 F.3d 913, 916 (6th Cir. 1995) (discussing constitutionality of "protective sweep" incident to arrest where officers have reasonable belief of danger posed by other individuals that may pose danger to those on the arrest scene).

## C.  *Jury Instruction*

Larry's second assignment of error is that the district court committed plain error by instructing the jury under Federal Rule of Evidence 404(b) in relation to evidence of the marijuana transaction in which he was engaged at the time he was arrested. The "plain error" standard applies, as defendant failed to object to admission of the evidence in question. *See United States v. Cowart*, 90 F.3d 154, 157 (6th. Cir. 1996) (citations omitted). The plain error doctrine is to be used "only in exceptional circumstances" and only where the error is so plain that the trial judge was "derelict in countenancing it." *Id.* (quoting *United States v. Cox*, 957 F.2d 264, 267 (6th Cir. 1992)).

Larry cannot demonstrate that the court's instruction constituted plain error. Defense counsel requested such a limiting instruction and did not object to the one given. Moreover, even where a court's admission of 404(b) evidence is deemed erroneous, the error is harmless where the defendant fails to object to it and where other properly admitted evidence of the defendant's guilt is overwhelming. *Id.* at 157-58. (citation omitted). We find that to be the case here, and reversal on 404(b) grounds thus "is inappropriate." *Id.*

III.

For the foregoing reasons, we **AFFIRM**.