**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0095n.06

**No. 08-6252**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Feb 16, 2010**
LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,    )
                             )
    Plaintiff-Appellee,     )
                             )
                 )   ON APPEAL FROM THE UNITED
v.                           )   STATES DISTRICT COURT FOR THE
                             )   EASTERN DISTRICT OF KENTUCKY
ANDRE LUNDY,                 )
                             )
    Defendant-Appellant.    )

Before:  BATCHELDER, Chief Judge; SUTTON, Circuit Judge; and WISEMAN, District Judge.[*]

WISEMAN, District Judge.  Defendant-Appellant Andre Lundy challenges the substantive and procedural reasonableness of his 200-month sentence.  Because the sentence imposed by the district court was both procedurally and substantively reasonable, we affirm.

I.

Lundy, a resident of Michigan, transported OxyContin pills into Kentucky with the intent to sell them, and, while there, was the subject of a controlled drug buy arranged by law enforcement officers.  As part of the controlled buy, a confidential informant arranged to purchase OxyContin pills from Lundy.  The informant was told that he would meet with Lundy's sister, who would bring the pills with her to a Sonic restaurant in Corbin, Kentucky.

---

[*]The Honorable Thomas A. Wiseman, Jr., Senior United States District Judge for the Middle District of Tennessee, sitting by designation.

In January 2008, Lundy's co-defendant, LaToya Horn—who is not actually Lundy's sister—arrived at the Sonic restaurant to make the exchange on Lundy's behalf. Horn was met by agents of the Drug Enforcement Agency ("DEA"), and, ultimately, 270 tablets of OxyContin, each weighing 80 milligrams, were recovered from the backseat of the police cruiser where she had placed them. After the agents located Lundy at the motel where he was staying, they questioned him about the OxyContin tablets. During this interview, Lundy admitted that he had come with Horn from Detroit in order to sell the OxyContin pills in Kentucky. Lundy further admitted that he had previously made approximately ten such trips.

Lundy was subsequently indicted on a single count of possessing, with intent to distribute, a quantity of pills containing OxyContin in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. He pled guilty to the charges but preserved his right to appeal the reasonableness of his sentence. A Presentence Report ("PSR") was prepared, which proposed holding Lundy responsible for 4,020 pills based upon a calculation that Lundy had actually trafficked this number of pills over the "approximately ten" trips he admitted making. The PSR also indicated that, based on his prior convictions, Lundy qualified for career-offender status.

At the sentencing hearing, the judge adopted the base offense level of 32 based on the drug-quantity calculations set forth in the PSR, and then assigned a 2-point increase for being an organizer or leader in the criminal activity, bringing the offense level to 34. (Sentencing Hr'g. at 23–24.) The judge then applied a 3-point reduction for cooperation, bringing the total offense level to 31, corresponding to a guideline sentencing range of 188–235 months imprisonment. (*Id*. at 25–26.)

The judge alternatively found that Lundy's status as a career offender, when considered with the maximum statutory punishment of 30 years for the offense, independently yielded an offense level of 34, which, when reduced by 3 points for cooperation, provided the same total offense level of 31, with the same sentencing range of 188–235 months under the guidelines. (*Id*. at 24–26.)

Lundy, through counsel, objected at the sentencing hearing to the calculation of his base offense level based on the PSR's alleged quantity of 4,020 OxyContin pills on the ground that, since he had pled guilty to possession of only 270 pills, his offense level should be determined solely based on those pills, which would place him at an offense level of 26. (*Id*. at 4–5.) Lundy subsequently modified his objection by testifying that the amount of pills used (4,020) in the PSR setting his base offense level at 32 was inaccurate; Lundy asserted in open court: "Truth be told, I came down here with 2,010 pills, okay? . . . [L]ike half. And that's the truth." (*Id*. at 13.) Lundy also argued that, since his prior crime of violence, bank robbery, was remote (though Lundy conceded it was "not too remote to be factored in"), the court should rely on that remoteness to justify a lesser sentence given the advisory nature of the guidelines. (*Id*. at 8.) He did not, however, argue that the bank robbery did not constitute a crime of violence as defined by the sentencing guidelines, and he did not dispute that this crime, when combined with his prior drug-related offense, qualified him for career-offender status.

The district court overruled Lundy's objections and held that the base offense level of 34 was correct because either: (1) the base level of 32, with a 2 point increase for his role in organizing and leading the transaction, was achieved even under Lundy's own estimation of the total amount of

drugs he was responsible for trafficking (2,010 OxyContin pills); or (2) as a career offender charged with a crime punishable by up to 30 years, Lundy merited an offense level of 34 under U.S.S.G. § 4B1.1. (*Id.* at 21–27.) Based on a criminal history of VI and a total offense level of 31 (incorporating the 3-point deduction for cooperation), the district court sentenced Lundy to 200 months imprisonment, which was toward the lower end of the applicable 188–235 month advisory guideline range. (*Id.* at 37–42.)

## II.

In this appeal, Lundy first argues that the district court committed procedural error in using the number of OxyContin pills proposed in the PSR—4,020—for purposes of determining his offense level, rather than the number Lundy admitted trafficking, 2,010. However, as the district judge noted, *either figure*, when translated into its marijuana equivalent for sentencing purposes, yields an amount greater than 1,000 but less than 3,000 kilograms of marijuana,[1] the range corresponding to a base offense level of 32. Furthermore, the judge did not err in finding that Lundy's own admission in court that he had transported 2,010 pills established by a preponderance of the evidence that Lundy was responsible for the sale or attempted sale of at least 2,010 pills.

---

[1]Section 2D1.1 of the Sentencing Guidelines provides that 1 gram of oxycodone is equivalent to 6,700 grams of marijuana. 1,000 to 3,000 kilograms of marijuana corresponds to an offense level of 32. Since the oxycodone tablets transported by Appellant were 80 milligrams strong, it is necessary to first convert that number into grams, yielding .08 grams per tablet. This creates a modified conversion ratio: .08 grams of oxycodone = 536 grams of marijuana. Appellant admits to trafficking at least 2,010 tablets, or 160.8 grams of oxycodone (2,010 * .08), which is equal to 1,077,360 grams of marijuana, or 1,077.36 kilograms of marijuana, a figure above the 1,000 kilogram threshold for purposes of § 2D1.1.

Lundy also argues that sentencing him based on either amount violated the beyond-a-reasonable-doubt standard mandated by *Booker*. (Appellant's Supp. Br. at 3–4 (citing *United States v. Booker*, 543 U.S. 220, 233 (2005)).) However, Appellant's argument misapprehends *Booker*. Because the guidelines post-*Booker* are no longer mandatory, the sentencing judge is free to use a preponderance-of-the-evidence standard in sentencing so long as he does not exceed the statutory maximum for the convicted crime; here, 30 years. *Booker*, 543 U.S. at 251–52. This argument is therefore without merit.

Finally, Lundy argues that his 200-month sentence was substantively unreasonable, and that a sentence at the bottom of the guideline range or, alternatively, a downward variance from that range was warranted. (Appellant's Br. at 10.) This Court reviews a sentence challenged on substantive-reasonableness grounds for abuse of discretion. *United States v. Presley*, 547 F.3d 625, 629 (6th Cir. 2008). We have made it clear that, on appeal, we will presume that a sentence within the advisory range is reasonable. *United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008.)

During the sentencing hearing, Lundy raised four arguments as to why he should receive a downward variance or a bottom-of-the-range sentence: (1) he had served very little time previously; (2) his prior felony conviction for bank robbery was remote in time; (3) he had cooperated extensively with authorities and taken responsibility for his actions; and (4) he had served only 2 days over the 60-day incarceration threshold for domestic violence convictions. (Sentencing Hr'g, at 28–30.)

The appellant's arguments are without merit. The district court addressed each of those factors and clearly considered them, and the other relevant sentencing factors, when sentencing Lundy to the lower end of the guideline range. (*Id*. at 37–42.) The court actually applied a 3-point reduction to the offense level for cooperation and acceptance of responsibility. (*Id*. at 26.) Although the sentencing court had the discretion to consider a lower sentence, it certainly was not required to do so. Moreover, the sentence actually handed down falls well within the 30-year maximum prescribed for the offense to which Lundy pled guilty, and the appellant has not pointed to anything in the record that would rebut the presumption that the sentence is reasonable.

III.

For the foregoing reasons, we hereby affirm the sentence imposed by the district court.