NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0012n.06

No. 09-5968

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

**FILED**

*Jan 09, 2012*

LEONARD GREEN, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff-Appellee, | ) |
| | ) |
| v. | ) ON APPEAL FROM THE |
| | ) UNITED STATES DISTRICT |
| MICHAEL ALDRIDGE , | ) COURT FOR THE WESTERN |
| | ) DISTRICT OF TENNESSEE |
| Defendant-Appellant | ) |

Before:     **KEITH, SUTTON, and McKEAGUE, Circuit Judges.**

**PER CURIAM**.  Defendant-Appellant Michael Aldridge appeals his tax evasion conviction. Aldridge was sentenced to 51 months incarceration, followed by 3 years of supervised release.  On appeal, he claims that the district court erred by misleading the jury in a supplemental jury instruction, admitting improper character evidence, enhancing the appellant's sentence for obstruction of justice, and imposing a 51 month sentence.  For the following reasons, we AFFIRM.

I.

On November 27, 2007, Michael Aldridge was charged with one count of attempting to evade or defeat income tax throughout the years of 1991-1997 in violation of 26 U.S.C. § 7201.  The indictment stemmed from a 2004 IRS investigation which revealed that Aldridge had an outstanding tax obligation of $170,000 for the years 1991-1997.  In 1996, Aldridge was indicted for tax evasion for his 1991 and 1992 taxes.  In 1997, Aldridge pled guilty to a misdemeanor offense for failing to

file his 1991 tax returns.  As a part of the plea agreement, Aldridge agreed to file his 1991 and 1992 tax returns and pay the taxes due and owing.

Pursuant to the plea agreement, Aldridge filed his 1991 and 1992 tax returns on August 28, 1997; however, Aldridge did not make any payments towards the taxes due and owing on the 1991 and 1992 tax returns.  Within the following five months, Aldridge filed each of his 1993-1997 tax returns late, but he did not pay his outstanding tax obligation.  Aldridge also did not file tax returns from the years 2001-2007, nor did he make payments towards the tax due and owing from the years 1991 through 1997.

In 1996, near the time Aldridge was indicted for tax evasion, he started an automotive oil change business called Pro Oil Inc.  In order to finance Pro Oil, Aldridge applied for two small business loans through the Small Business Administration (SBA) and Bank of Tennessee.  In his SBA loan application, Aldridge listed that he had assets totaling $887,500, which included stocks, cash, personal property, and real estate.  Aldridge also stated in his loan application that he owned the Julip Cove house he lived in and held approximately $97,000 in equity in the house.   When Aldridge applied for and received a second loan in February, 1997, he listed $1,050,000 in assets, which included a $98,000 equity interest in his Julip Cove property.

Notwithstanding the $1.05 million he listed as his assets on his loan applications in 1997, when Aldridge filed two Offers in Compromise (OIC) with the IRS, he only listed $14,000 in assets, which did not include the Julip Cove property.  Aldridge also did not use his alleged $1.05 million assets to make any payments towards his 1991 through 1997 tax obligation. After the OIC specialist, Dorothy Poole, discovered the discrepancies between Aldridge's loan applications and his OIC

filings, the IRS rejected his OICs. Aldridge thereafter purchased a $28,000 Ford in 2001 and a Chevrolet Corvette in 2003. Both cars were purchased in the name of his sister. In 2004, Aldridge sold his Pro Oil business for $1.4 million and received a profit of $434,000 which was paid to his attorney's escrow account. Aldridge instructed his attorney, Larry Austin, to divide the money among his various relatives. After Aldridge told Mr. Austin that his relatives had loaned money to Pro Oil, Mr. Austin tendered checks in the amount of $50,000 to the requested recipients. None of the $434,000 of profit was reported to the IRS nor was it used to pay the IRS debt owed from the 1991-1997 tax obligation.

At the trial, the Government introduced the foregoing facts along with testimony by all those who received checks from the sale of Pro Oil. Aldridge's uncle testified that he received a $50,000 check in 2004, but never loaned Pro Oil any money. Further, his uncle deposited the check at Aldridge's request and withdrew all the money in cash amounts under $10,000. Aldridge's cousin and aunt also testified to a similar effect. Another relative who received a $50,000 check testified that Aldridge told him to not exceed $10,000 in a withdrawal so that the withdrawal would not be reported to the IRS. The Government also introduced evidence that Aldridge's uncle and aunt had purchased the Julip Cove house for Aldridge, who had lived in the house and paid all of the bills. Aldridge funded his girlfriend to purchase the house from his uncle and aunt and hold the title in her name. None of the $152,000 in proceeds from the sale of Julip Cove property was reported to the IRS or used to pay Aldridge's outstanding tax obligation.

Aldridge testified on his own behalf at trial and contended that he did not make payments or

pay off the IRS because the amount due was in dispute. Aldridge also testified that he did not hide

his assets to avert IRS collection, but rather to keep them from his wife.

During jury deliberations, the jury submitted the following question and commentary to the

court:

> If an affirmative act is found does the jury have to agree that the reason defendant
> gave for the act was a reasonable answer? If answer given was reasonable the jury
> will have to vote not guilty. If answer given was unreasonable the jury will have to
> vote guilty.

The court supplied the following answer to the question:

> The answer to your first question is "No." The elements of the charged offense are
> set out in the instructions. The question is not whether the reason offered by the
> defendant is reasonable. That is a factor you can consider in determining whether the
> defendant acted in good faith, as has been previously instructed, but whether it is
> reasonable or unreasonable is not determinative of the issues in this case.

> The jury is to determine whether or not the government has proven beyond a
> reasonable doubt each of the three elements as set out in the instructions.

The jury subsequently returned a guilty verdict against the defendant for violating 26 U.S.C

§ 7201. The court sentenced Aldridge to 51 months—the top of the guideline range. The court also

gave a two level adjustment under U.S.S.G. § 3C1.1 for finding that Aldridge's in-court testimony

constituted an obstruction of justice.

II.

**Supplemental Jury Instruction No. 2**

Where there is no objection to a supplemental jury instruction, we reverse the district court's

order of conviction only if "the supplemental jury instructions—either in form or mode of

transmission—constituted plain error." *United States v. Combs*, 33 F.3d 667, 669 (6th Cir. 1994).

"Plain error requires a finding that, taken as a whole, the jury instructions were so clearly erroneous

as to likely produce a grave miscarriage of justice." *Id*.

A supplemental jury instruction is one that goes beyond reciting what has previously been

given. *Id*. at 670. The trial court has a duty to clear up any uncertainties which the jury brings to the

court's attention. *Id*. The propriety of a supplemental jury instruction "must be measured 'by

whether it fairly responds to the jury's inquiry without creating . . . prejudice.'" *United States v.

Nunez*, 889 F.2d 1564, 1568 (6th Cir. 1989) (quoting *United States v. Giacalone*, 588 F.2d 1158,

1166 (6th Cir. 1978)).

During jury deliberations, the jury asked: "If an affirmative act is found does the jury have

to agree that the reason defendant gave for the act was a reasonable answer?" The question

continued with the commentary: "If answer given was reasonable the jury will have to vote not

guilty. If answer given was unreasonable the jury will have to vote guilty." The district judge noted

that the jury was confused and harbored an incorrect understanding of the law. With the intent to

clarify the law for the jury, the district judge answered the question with Supplemental Jury

Instruction No.2, which stated:

> The answer to your first question is "No." The elements of the charged offense are
> set out in the instructions. The question is not whether the reason offered by the
> defendant is reasonable. That factor you can consider in determining whether the
> defendant acted in good faith, as has been previously instructed, but whether it is
> reasonable or unreasonable is not determinative of the issues in this case.

The jury is to determine whether or not the government has proven beyond a reasonable doubt each of the three elements as set out in the instructions.

Upon drafting this answer, the court read the proposed answer to the defense attorneys, who did not object. Rather, in response to the proposed supplemental jury instruction, the defense stated on the record, "The way you read it, Your Honor, sounds pretty good to me. I would like to look at it." After the judge read the above instruction to the jury, he gave the defense the opportunity to object and the defense had no objections. Since the defense did not object to Supplemental Jury Instruction No. 2,we review for plain error.

The court properly clarified the jury's uncertainties in Supplemental Juror Instruction No. 2. First, the appellant conceded in its brief that the judge's answer was the correct statement of law. Moreover, the original jury instructions correctly stated the applicable law, as both parties agree. In order to prove the crime of tax evasion, the Government must prove that: 1) there was a substantial income tax deficiency due from the defendant; 2) the defendant committed an affirmative act constituting tax evasion or attempted tax evasion; and 3) the defendant acted willfully in attempting to evade tax payment. The jury's inquiry goes to the wilfulness of the defendant's actions. The court was correct in noting that the reasonableness of the defendant's "affirmative act" was not determinative of that issue.

Reasonableness does play a role in determining whether the defendant acted in good faith. Good faith is a defense to the willfulness element that the government must prove. The court instructed the jury that if it found "that the defendant, subjectively in his own mind, believed that he was not required by the law to file the returns in question or pay the taxes, it will be your duty to find

him not guilty." The jury could use the reasonableness of the defendant's explanation for his actions to assess whether the defendant's version was credible. The more unreasonable the jury perceives the defendant's reasons for not paying taxes to be, the more the jury would likely infer that the defendant's proffered reasons were pretextual. Similarly, the more reasonable the defendant's reasons were, the more likely it is that the jury would credit them as being truthful. If the jury believed the testimony of the defendant and that testimony reflected an honest mistake in law, then the jury could find that the defendant acted in good faith. Accordingly, the court properly instructed the jury that the reasonableness of the defendant's actions "is a factor [the jury] can consider in determining whether the defendant acted in good faith." Given that the court properly stated the law in its supplemental jury instructions, there was no plain error.

**Prior Acts**

The appellant contends that the district court improperly admitted his prior acts during the trial; however, the defendant did not object at trial. "Generally, this court conducts a three-pronged review of a district court's admission of evidence or prior bad acts pursuant to Fed.R.Evid. 404(b)." *United States v. Cowart*, 90 F.3d 154, 157 (6th Cir. 1996) (internal citations omitted). However, when the complaining party fails to object to the evidence in the district court we review the admission of these acts for plain error. *Id.* "Plain errors are limited to those harmful ones so rank that they should have been apparent to the trial judge without objection, or that strike at fundamental fairness, honesty, or public reputation of the trial." *United States v. Murphy*, 241 F.3d 447, 451 (6th Cir. 2001) (quoting *United States v. Evans*, 883 F.2d 496, 499 (6th Cir. 1989)).

Rule 404(b) prohibits admitting evidence of other "crime[s], wrong[s], or . . . act[s]" to prove the character of a person in order to show action in conformity therewith. Fed. R. Evid. 404(b). A party may introduce such evidence to prove motive, intent, knowledge, or absence of mistake. *Id*. Moreover, wrongs that are intrinsic to the charged offense, fall outside the ambit of Rule 404(b). *United States v. Everett*, 270 F.3d 986, 992 (6th Cir. 2001). Intrinsic acts are those that are a part of a single criminal episode. *United States v. Barnes*, 49 F.3d 1144, 1149 (6th Cir. 1995).

The appellant cites four particular instances where the district court allegedly erred in admitting evidence. The first instance is when the court allowed an IRS agent to testify that the appellant did not file tax returns for years 2000 through 2007. The second instance is when the Vice President of the Bank of Tennessee testified that the appellant made false statements under the penalty of perjury on his loan application. The third instance occurred when the appellant's uncle testified that the appellant instructed him to keep withdrawals under $10,000 to avoid the transaction being reported to the IRS. Lastly, the appellant argues that the district court erred in allowing the appellant's former girlfriend to testify that "the appellant committed mortgage fraud in filling out paperwork for a home loan." Although the appellant uses the term "mortgage fraud," the witness never used the term "mortgage fraud" in her testimony. Rather, she testified that the monthly income statement was incorrect. The appellant failed to object to any of the alleged infractions, thus triggering plain error review.

All of the aforementioned evidence was properly admitted. None of the acts comes within the ambit of 404(b). Rather, each of the aforementioned acts is an intrinsic act that falls outside of the purview of Rule 404(b). In a tax evasion case, the Government has the burden to prove that: (1)

the defendant attempted to defeat a tax or the payment thereof; (2) there is a tax due and owing; and (3) willfulness. In proving attempt to evade, the Government can cite any conduct in which the likely effect would be to mislead or conceal. *Spies v. United States*, 317 U.S. 492, 499 (1943). This makes relevant almost any conduct in which a reasonable person can infer an intent to mislead. Similarly, in proving "willfulness" the Government heavily relies on circumstantial evidence which can raise the inference of intent.

Rule 404(b) does not apply here because each of the instances cited by the appellant constitutes evidence of a single criminal episode or at the very least a continuing pattern of illegal activity—here evading taxes. Testimony about the defendant not filing his taxes from 2000-2007 evidences a singular criminal plan to evade tax obligation. The testimony from the Vice President of the Bank of Tennessee is inextricably tied to defendant's general pattern of concealment, as is the testimony about limiting the size of cash withdrawals. Similarly, the testimony about the sale of the Julip Cove property is inextricably tied to the continuing crime of concealing the defendant's true assets as to evade tax payment due and owing. Each of these instances cited by the appellant relates to a single criminal episode, thus falling outside the ambit of Rule 404(b).

Even if Rule 404(b) did govern the admission of the aforementioned instances, plain error review allows this court to reverse only if the admission of the evidence constituted an error so rank as to be noticed by the court without objection or strike at the fundamental fairness in the trial. Here, the admission of the aforementioned evidence does not constitute a harm that the court should notice without objection, nor does it strike at the fundamental fairness in the trial.

**Sentence Enhancement**

We employ a three-step process when reviewing a district judge's decision to impose an obstruction of justice enhancement pursuant to § 3C1.1. This court reviews: (1) the district court's finding of facts for clear error; (2) the district court conclusion that a given set of facts constitutes obstruction of justice *de novo*; and (3) the application of the two level enhancement de novo. *United States v. Chance*, 306 F.3d 356, 389 (6th Cir. 2002).

Section 3C1.1 provides:

> If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels.

U.S.S.G § 3C1.1

The district court made a finding that the appellant willfully obstructed the administration of justice. First, the court found that the appellant falsely testified that he had instructed his attorney to divert the money to the appellant's relatives to keep the money away from his ex-wife. The appellant's attorney directly contradicted that testimony by claiming that he was unaware of a scheme to conceal money from the appellant's ex-wife or the IRS. The court found that the statement was a material misstatement given that it related to a central factual question in the case. Further, the court found that the statement was made willfully for the purpose of misleading the jury. The appellant also testified that he had no intention to evade taxes because the IRS was not after him. The evidence showed that the appellant did have a motive to evade the IRS given that liens had been placed on his property and he had previously been prosecuted. The appellant further testified that he did not pay the back taxes after receiving $433,000 because he was waiting on the IRS to make

a determination as to how much taxes he owed and how much his wife owed. The district court found that the appellant manufactured that dispute and, in fact, knew that he had an obligation to pay the entire amount. The court dismissed the appellant's reason as an attempt "to deceive the jury and anyone else who was a trier of fact in this case regarding his understanding concerning his obligation to pay the Internal Revenue Service." The court had ample evidence of instances where the defendant obstructed the administration of justice by providing false or misleading testimony about material evidence. The district court's findings did not amount to clear error. The two-level enhancement pursuant to § 3C1.1 was properly applied to the appellant's sentence.

**Substantive Reasonableness**

We review the substantive reasonableness of a sentence under an abuse-of-discretion standard. *United States v. Petrus*, 588 F.3d 347, 353 (6th Cir. 2009). In reviewing for substantive reasonableness, this Court takes the totality of circumstances into account, including the extent of any variance from the Guidelines range. *Id*. "For sentences within the Guidelines, we may apply a rebuttable presumption of substantive reasonableness." *Id*. This Court generally gives due deference to the district court's conclusion that the sentence imposed is warranted by the § 3553(a) factors. *Id*. The fact that this Court would have reasonably concluded a different sentence was appropriate is insufficient to justify a reversal. *Id*.

At the sentencing hearing, the court determined the Guidelines range to be 41 months to 51 months. The court ultimately sentenced the appellant to 51 months. Since the sentence was within the Guidelines, we apply a rebuttable presumption of substantive reasonableness.

The court properly considered the 18 U.S.C. § 3553(a) factors. As to the nature and circumstances of the offense, the court found that "[t]he defendant over a period of time engaged in numerous manipulations to avoid" his tax obligation. The court discussed the need to afford adequate deterrence to criminal conduct. The court observed that "[i]t is very important in these types of cases that the public clearly understand that the penalties will exceed any gain or benefit that the individual may derive from tax evasion." The court also discussed the need to protect the public from further crimes of the defendant. The court found:

> The penalty should also protect the public from the defendant where that is necessary. In some cases, the defendant is not going to reoffend, and it is clear that they will not likely reoffend . . . . When a person has a history of committing violations or has committed a violation in a long protracted way indicating a thought process that justified in that person's own mind the commission of the offense, the chance of recurrence is greater, the need to protect the public is clear and the public should be protected. There is some concern in this regard. Many people were adversely affected by Mr. Aldridge's activities . . . . A person who does this sort of thing that exposes family and friends to this type of activity does harm the public. There is a need in this case to consider a sentence that will protect the public from further criminal conduct by Mr. Aldridge, and to impose conditions that will make it more difficult for him to commit these crimes in the future.

Giving the appropriate deference to the district court's consideration of the § 3553(a) factors, it is clear that the district court imposed a sentence based on sound reasoning, well-supported facts, and a proper consideration of the Guidelines. The appellant has not put forth sufficient evidence to rebut the presumption of substantive reasonableness afforded to a district court that imposes a sentence within the Guidelines.

III.

For the foregoing reasons, we AFFIRM.