NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0409n.06

Case No. 23-1045

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Oct 17, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff - Appellee, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE WESTERN DISTRICT OF |
| | ) | MICHIGAN |
| REDO ROLLING, | ) | |
| Defendant - Appellant. | ) | OPINION |
| | ) | |

Before: BOGGS, MOORE, and GIBBONS, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. Appellant Redo Rolling was convicted on four counts related to a series of robberies of credit unions and cash advance businesses in Southwestern Michigan. He challenges the constitutionality of a warrant supporting a cell phone search, the district court's failure to declare a mistrial based on certain trial testimony, the sufficiency of the evidence supporting his conviction, and the reasonableness of his sentence. We affirm his conviction and sentence.

**I.**

In an 18-month span from June 2020 to December 2021, three cash advance businesses and two credit unions in Southwestern Michigan were robbed. Tommy Jurl testified at trial that he and Redo Rolling committed these robberies. Jurl testified that Rolling chose the locations to rob, drove them there, and parked out of sight of the businesses, while Jurl entered the businesses, passed notes to employees, and demanded money. Jurl then left the businesses, cash in hand, and Rolling drove the two away. The robberies took place on June 23, 2020, at a Check 'N Go in

Kalamazoo; on July 16, 2020, at a Check 'N Go in Grand Rapids; on November 18, 2021, at a Lake Michigan Credit Union in Byron Center; on November 24, 2021, at an Honor Credit Union in Wyoming (Michigan); and on November 30, 2021, at a Lake Michigan Credit Union in Grand Haven. *See United States v. Tommy Jurl*, No. 23-1010.

When, on December 2, 2021, Jurl and Rolling attempted to rob the Instant Cash Advance in Grand Rapids, Jurl testified that an employee called the police instead of giving him the money he demanded. The two fled the scene in Rolling's car. On the day before the attempt, detectives, having obtained a warrant based on video and witness information linking the car to the locations of previous robberies, had placed a GPS tracking device on Rolling's silver Ford Taurus. Using that GPS, the police pulled the two over a few blocks away and arrested them.

Rolling was charged with two counts of aiding and abetting robbery affecting commerce, in violation of 18 U.S.C. § 1951(a) and § 2, three counts of aiding and abetting credit union robbery, in violation of 18 U.S.C. § 2113(a) and § 2, and one count of aiding and abetting an attempted robbery affecting commerce, in violation of 18 U.S.C. § 1951(a) and §2. Jurl, who had originally been charged alongside Rolling, pled guilty to only one count of credit union robbery in exchange for testifying against Rolling. After a five-day trial in August 2022, the jury found Rolling not guilty of the two robbery-affecting-commerce charges but convicted him of the four remaining charges. The district judge sentenced Rolling to 120 months' imprisonment and ordered he pay $32,554 in restitution jointly and severally with Jurl. Rolling appealed.

**II.**

Rolling raises four issues on appeal. He challenges the constitutionality of a search warrant for a cell phone found at his feet at his arrest. He argues that references to uncharged drug activity at his trial were sufficiently prejudicial to warrant a mistrial, even though he did not object to their

admission at trial. He contends that the evidence was legally insufficient for the jury to convict him. And he argues that his sentence was unreasonable. All four of these challenges fail.

**A.**

Rolling's challenge to the cell phone search warrant argues that the affidavit underlying the warrant application did not establish a sufficient nexus to criminal activity to support a finding of probable cause.

The Fourth Amendment requires that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Probable cause for a search warrant is "a fair probability that contraband or evidence of a crime will be found in a particular place" based on "all the circumstances set forth in the affidavit." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The affidavit must "establish a nexus" between the evidence expected to be found and the location to be searched. *United States v. Helton*, 35 F.4th 511, 517 (6th Cir. 2022).

As a conclusion of law, a district court's decision on the existence of probable cause is reviewed de novo. *United States v. Sheckles*, 996 F.3d 330, 337-38 (6th Cir. 2021). The probable cause standard itself, however, gives "great deference" to the initial warrant-issuing judge's decision: it asks whether the determination is supported by a "substantial basis" in the affidavits seeking the warrant. *Id.* (quoting *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000)(en banc)).

The affidavit at issue supported the search warrant for a phone found at Rolling's feet. This affidavit, prepared by a Wyoming, Michigan police detective, focused on the connections between Rolling, his car, and the previous robberies. It described the process by which detectives linked a silver Ford Taurus to the Honor Credit Union robbery and then to Rolling. It alleged a belief,

based on a larger investigation, that Jurl and Rolling were the two suspects in the Honor robbery as well as similar robberies in the area. It detailed the discovery of two recorded "bait" bills in Rolling's wallet—bills that came from different credit union robberies. And it described the discovery of clothing linked to two robberies in a warrant-backed search of Rolling's home. It stated that the cell phone to be searched was found on the floorboards of Rolling's car, below where he was sitting and driving when he and Jurl were arrested on December 2. Finally, the affidavit relied on the detective's "experience and training," stating that "cell phone records greatly assist in investigations by showing exact times suspects use their phones before, during, and after commission of crimes." DE 35-4, Affidavit Supporting Phone Search Warrant, Page ID 94.

This affidavit contains much more linking Rolling and the car to crimes than the sparse "boilerplate" language found insufficient in *United States v. Ramirez*, the district court case to which Rolling analogizes this one.[1] 180 F. Supp. 3d 491, 493-96 (W.D. Ky. 2016). The question, however, is whether the indicia of criminal activity alleged, in addition to recited statements regarding experience and training, can support probable cause for the further search of a cell phone absent any phone-specific allegations in the warrant application.

Rolling argues that seizing a phone at the time of an arrest, then applying for a warrant to search the phone based on general-purpose allegations that could be made at the time of many arrests, is functionally similar to the warrantless search of a cell phone incident to arrest, which the Fourth Amendment does not permit. *Riley v. California*, 573 U.S. 373 (2014). While the point is well taken and appealing at first glance, this *Riley*-violation-in-slow-motion theory overlooks

---

[1] The *Ramirez* affidavit merely alleged that the phone to be searched had been seized from the suspect upon his arrest and that based on the officer's experience and training, "individuals may keep text messages or other electronic information stored in their cell phones which may relate them to the crime and/or/co-defendants/victim." 180 F. Supp. 3d 493.

the legal significance of the intervention by the neutral magistrate before a warrant can issue. *Riley* itself took care to draw this distinction between warrantless searches and those obtained after application to a "neutral and detached" decisionmaker. *Id.* at 382 (quoting *Johnson v. United States*, 333 U.S. 10, 14 (1948)).

This court has not decided whether the requisite probable cause nexus for a warrant to search a cell phone is only "a fair probability" that "the phone's data 'will aid in a particular' investigation and disclose evidence of criminal activity" or if, instead, the affidavit must make factual allegations that "the phone itself is being used 'in connection with criminal activity.'" *Sheckles*, 996 F.3d 330, 338 (citations omitted); *United States v. Bass*, 785 F.3d 1043, 1049 (6th Cir. 2015) (sufficient nexus alleged when affidavit stated that suspect used cell phones to communicate with co-conspirators and was using the particular phone when arrested); *United States v. Merriweather*, 728 F. App'x 498, 505 (6th Cir. 2018) (declining to decide correctness of underlying probable cause determination, where affidavit stated that cell phone had been found in car along with drugs at time of arrest). Here, the district court found it "reasonable to infer that a cell phone possessed during a robbery conducted with the aid of another individual will contain evidence related to that offense." DE 70, Opinion on Motion to Suppress, Page ID 382. While the inference may be reasonable,[2] we need not decide today whether mere allegations of participation in criminal activity committed by more than one person automatically support a probable-cause determination for the search of cell phones found at the time of an arrest. Even if the nexus between Rolling's cell phone and the robberies were insufficient to support a finding of

---

[2] It also may not be reasonable, given that the alleged robbers were apprehended together and could instead have communicated about the robbery in person.

probable cause, suppression of the seized cell phone evidence is not the correct remedy when officers relied on the warrant in good faith.

Under *United States v. Leon*, evidence gained by means of a deficient warrant need not be suppressed if law enforcement officers permissibly relied on the warrant in good faith. 468 U.S. 897 (1984). Suppression remains "appropriate" in certain circumstances: (1) if the issuing magistrate "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; (2) where "the issuing magistrate wholly abandoned his judicial role" in such a way that "no reasonably well trained officer should rely on" it; (3) where the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) where the warrant is "so facially deficient, i.e., in failing to particularize the place to be searched or the things to be seized" that law enforcement cannot "reasonably presume it to be valid." *Id.* at 923. But absent these circumstances, the warrant's later invalidation by a reviewing court does not require suppression of the evidence as long as the officers relied on the warrant in good faith. *Id.* at 923-24.

Rolling's insufficient-nexus argument, aimed at the third of the four *Leon* circumstances, is unavailing. *Leon* and its progeny impose a lower bar for avoidance of suppression than that required for a finding of probable cause. *See id.* at 914. Even lacking probable cause, suppression is not required unless the warrant application is "bare bones," which means the warrant was so obviously insufficient that law enforcement itself was "entirely unreasonable" to search and seize evidence based on it. *United States v. White*, 874 F.3d 490, 506 (6th Cir. 2017) (quoting *Leon*, 468 U.S. at 923). A "minimally sufficient nexus" suffices to avoid the "bare bones" label. *United States v. Neal*, 106 F.4th 568, 572 (6th Cir. 2024) (per curiam) ("A 'minimally sufficient nexus'"

merely "requires . . . a modicum of evidence, however slight, connecting the illegal activity and the place to be searched.'" (quoting *White*, 874 F.3d 497)).

We have recognized the "frothy" nature of the nexus issue in the *Leon* context, often where the challenged affidavit does not specifically allege a direct factual connection between a home sought to be searched and criminal activity. *United States v. Reed*, 993 F.3d 441, 452 (6th Cir. 2021) ("[H]ow can we expect nonlawyer officers to know better than judges that their affidavits do not suffice except in obvious cases?") (quoting *United States v. Ardd*, 911 F.3d 348, 351 (6th Cir. 2018)). There is similar uncertainty in the phone-search context. *See Merriweather*, 728 F. App'x at 505 (rejecting suppression where affidavit alleging phone's likely involvement in drug purchasing "stands in stark contrast to prototypical bare-bones affidavits"); *compare United States v. Smith*, No. 21-1457, 2022 WL 4115879, *6 (6th Cir. Sept. 9, 2022) (Guy, J., writing separately) (arguing that probable cause was present because the "training and experience" of an officer supplied the necessary nexus), *cert. denied*, 143 S. Ct. 2499 (2023) *with id.* at *15-16 (Clay, J., writing separately) (concluding that the affidavit in support of the cell phone search warrant could not support probable cause and could not be relied on in good faith).[3]

In light of this uncertainty, it was not impermissibly reckless for officers to rely on a warrant which contained factual allegations that Rolling's car and Rolling himself had been connected to several robberies committed with another person and that the phone had been found

---

[3] The division in *Smith* is instructive on this issue. In that case, a warrant affidavit had alleged that Smith was arrested in possession of a loaded firearm and in the company of someone with a fresh gunshot wound, that this information "corroborate[d]" evidence from an anonymous source, and that "affiant believes . . . there could be information on the phone . . . that would show whether Smith possessed a firearm or communicated with anyone about his involvement" in a shooting. 2022 WL 4115879 at *11-12. Panel judges reached different conclusions on the issues of probable cause and good faith reliance. Judge Clay and Judge Moore held that this affidavit was lacking sufficient indicia of probable cause (with Judge Guy arguing that the cell phone warrant was supported by probable cause) while Judge Guy and Judge Moore held that *Leon* applied and the evidence ought not to be suppressed (with Judge Clay arguing that the warrant was so deficient that reliance on it was impermissibly reckless.). *See id.* at *9-12.

in the car. *See id.* at \*17 (Moore, J., concurring in the judgment). Even if the judge's inference that the phone itself was used in planning or discussing the robberies and would thus contain evidence of crime was too tenuous to support a finding of probable cause, it was not too great a leap for good faith reliance. *See White*, 874 F.3d at 500 ("The takeaway from these cases is that reasonable inferences that are not sufficient to sustain probable cause in the first place may suffice to save the ensuing search as objectively reasonable"). [4] The district court did not err in denying the motion to suppress.

**B.**

Rolling's second principal argument is that references made during Jurl's trial testimony and Rolling's cross examination to uncharged drug-related activity were unfairly prejudicial to Rolling, necessitating a mistrial.

While the denial of a motion for a mistrial is reviewed for abuse of discretion, because Rolling neither objected to this testimony at trial nor moved for a mistrial, we review the failure to declare a mistrial for plain error. *United States v. Caver*, 470 F.3d 220, 243-45 (6th Cir. 2006). This standard means that even if a clear error is established, the conviction will be reversed only where it (1) affected substantial rights and (2) seriously affected the fairness, integrity, or public reputation of judicial proceedings. *United States v. Cunningham*, 679 F.3d 355, 385 (6th Cir. 2012). The underlying mistrial inquiry is framed by five factors:

> (1) whether the remark was unsolicited, (2) whether the government's line of questioning was reasonable (3) whether a limiting instruction was immediate, clear, and forceful, (4) whether any bad faith was evidenced by the government, and (5) whether the remark was only a small part of the evidence against the defendant.

---

[4] Rolling argues that it could not be good faith to rely on this warrant application ten years after *Riley*. But this court itself has continued to dispute the nexus standard in those same ten years. *See supra.*

*Zuern v. Tate*, 336 F.3d 478, 485 (6th Cir. 2003) (citing *United States v. Forrest*, 17 F.3d 916, 920 (6th Cir. 1994)).

We typically apply the *Forrest* factors, however, once it is established that testimony or statements were improper. *See id.* (*Forrest* "listed five factors to consider whether a mistrial is warranted after an improper reference") (habeas context); *United States v. Gonzalez*, 257 F. App'x 932, 936 (6th Cir. 2007) (*Forrest* applies to "improper reference"); *United States v. Pugh*, No. 96-3954, 1998 WL 165143, at *4 (6th Cir. March 31, 1998) (holding that district judge's remark challenged in motion for mistrial was "neither improper or flagrant, nor made in bad faith" and not applying *Forrest* factors); *U.S. v. Tate*, 124 F. App'x 398, 400 (6th Cir. 2005) (per curiam).

The statements at issue occurred multiple times during trial. Jurl mentioned owing Rolling money in relation to drug usage several times on direct examination, testifying, for instance, about the November 24, 2021 Honor, Michigan credit union robbery that "I told [Rolling], all right, we can do another one, you know, just to pay him back, you know what I mean, because I had owed him—I had used a lot of his drugs, you know, I smoked a lot of crack, and I told him that I would do another one to pay him back so we can kind of make even on it." DE125, Trial Transcript, Page ID 1352, 1357-58. On cross-examination by Rolling's lawyer, Jurl testified that he had been "smoking crack a lot back then" and then that it was "ironic" that Rolling's lawyer had asked that question. DE125, Trial Transcript, Page ID 1387. Later, on re-direct examination, Jurl testified that what he thought was "ironic" was that "the reason why [Rolling and Jurl are] in this courtroom now [is] because I began to use the crack that he started selling in my apartment." DE125, Trial Transcript, Page ID 1409. Rolling testified in his own defense. On cross-examination by the government, he denied providing Jurl drugs and also that Jurl owed him drug money.

The government asked again, and Rolling denied it again, after an "asked and answered" objection by his counsel that was not ruled on by the district court.

The parties characterize this testimony in sharply different ways. For Rolling, it represents inadmissible and impermissibly prejudicial evidence, dispelling the presumption of innocence and casting Rolling as a threatening drug dealer on trial for masterminding a robbery scheme. For the government, the testimony was admissible either as *res gestae* evidence filling in the story of the robberies, or as admissible other-act evidence under Federal Rule of Evidence 404(b) that tended to establish Rolling's motive, intent, plan, or knowledge.

This evidence could have been admitted as *res gestae* or "background" evidence, filling in the story of the robberies. *See United States v. Clay*, 667 F.3d 689, 697 (6th Cir. 2012). Rolling argues that, properly considered, *res gestae* evidence is always admissible under another rule— the term does not do any independent work. Indeed, "*res gestae*" does not transform inadmissible evidence into admissible evidence by incantation. But in "limited circumstances when the evidence includes conduct that is inextricably intertwined with the charged offense," this background exception to Rule 404(b) can allow evidence "that is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense." *Id.* (quotation omitted).

The existence of a debt that Jurl owed to Rolling fills in a missing link, explaining why Jurl might have carried out a riskier role in a robbery scheme, yet abided by Rolling's decision to divide the proceeds in Rolling's favor. The statement that the debt was specifically for the sale of controlled substances, where no such activity was charged, is a closer call. Because Rolling's

counsel never objected to this testimony, however, there was no chance for the parties or the court to develop its admissibility.

The evidence could also have been admitted under Rule 404(b) itself. This Rule provides for the potential admissibility of "evidence of any other crime, wrong, or act" for the purpose of "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). Generally, to admit 404(b) evidence, the prosecution must give notice to the defendant prior to trial and the district court must make specific determinations. *See id.* (b)(3); *United States v. Hardy*, 228 F.3d 745, 750 (6th Cir. 2000). But where, as here, the defendant does not object to the evidence, this process is "superseded," and any error that may have resulted from allowing the government to elicit Jurl's testimony is reviewed for plain error. *United States v. Cowart*, 90 F.3d 154, 157 (6th Cir. 1996); *United States v. Aldridge*, 455 F. App'x 589, 593-94 (6th Cir. 2012); *United States v. Smith*, No. 22-3932, 2024 WL 196936, at *2 (6th Cir. Jan. 18, 2024).

To support admissibility under Rule 404(b), the government relies on *United States v. Cody*, 498 F.3d 582, 590-91 (6th Cir. 2007), in which evidence regarding a drug habit was considered admissible as helping establish the defendant's motive for bank robberies. Rolling responds that *Cody* stands only for the proposition that 404(b) permits admission of other-act evidence showing the *defendant's* motive. In *Cody*, the challenged testimony was made by the defendant's wife and son, who testified that charged bank robberies were committed "to acquire money to . . . purchase more drugs . . . and to pay off debts that they owed" to a drug dealer. *Id.* *Cody* upheld the use of testimony regarding an *uncharged party's* drug selling, and a *defendant's* uncharged drug use, as evidence supporting the *defendant's* motive to commit charged robberies.

Today's case presents a further twist on this posture: testimony regarding a *defendant's* uncharged drug selling, and a *witness's* uncharged drug use, as evidence supporting the *witness's* motive.

By the text of the rule, however, admissible other-act evidence may show the "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident" of "a person." Fed. R. Evid. 404(b)(2); *see U.S. v. Robinson*, 272 F. App'x 421, 430 (6th Cir. 2007) ("Rule 404(b) applies to any person" and explicitly contemplates the use of a witness's other-act evidence by the defendant for the introduction of exculpatory testimony as "reverse 404(b)" evidence). It was not plain error to admit this evidence for the purpose of illuminating Jurl's motive. In addition, the existence of a debt that Jurl owed to Rolling could have also been admitted as to Rolling, to show Rolling's own motive to aid and abet Jurl in committing robberies and share the profits.

On our standard of review, Rule 404(b) does not bar the admission of this testimony if it is used to show Jurl's motive or Rolling's motive for involvement in a string of robberies, or perhaps the outlines of the coordination the government claimed. And if the testimony was arguably admissible—if it would have been within the discretion of the district court to admit it—the failure to declare a mistrial absent a motion is not plain error. It bears noting that rather than objecting at the time, Rolling's counsel used Jurl's drug use to impeach his testimony.

Finally, the evidence could have survived Rule 403's test for prejudice. As with an objection under Rule 404, when the evidence was not objected to at trial, a challenge on appeal based on Rule 403 is reviewed for both abuse of discretion and plain error. *See United States v. Lester*, 98 F.4th 768, 776-77 (6th Cir. 2024). As the challenged testimony was probative of the relevant motives, plans, and circumstances of Rolling, Jurl, and the robberies, and defense counsel made use of it for impeachment, admission of this testimony was not plain error.

Although Rolling forcefully argues the *Forrest* factors, he merely gestures to the clearness, substantial rights, and fairness prongs of the plain error test that we apply in this posture. The facts of *Forrest* itself demonstrate the different context of that case. There, defense counsel objected immediately to a law enforcement agent's testimony hinting that defendant Forrest had been imprisoned for robbery, then pointed out at a sidebar that this was prejudicial information and Forrest had not testified in his own defense. 17 F.3d at 919-20. The district court agreed and ordered the question "excised." *Id.* at 920. When the agent was called again, he "blurted out" information regarding the same criminal history—defense counsel objected, and the district judge sustained the objection and immediately instructed the jury to "disregard those remarks." *Id.* On cross-examination of the agent by defense counsel, the agent a third time referenced the robbery imprisonment, after which the defense moved for a mistrial, which was denied. *Id.*

All this is to reiterate that even if a hypothetical motion for a mistrial would have been worth considering, the failure to order a mistrial sua sponte is reviewed more deferentially than a contested ruling on admissibility. The plain error test necessarily contemplates some situations in which the denial of a mistrial upon motion is outside the discretion of the district court and reversible, but the refusal to do so sua sponte on the same facts is not. *But see United States v. Cruse*, 59 F. App'x 72, 78-79 (6th Cir. 2003) (finding a "blurted" statement harmless where the "statement was immediately objected to and sustained with a curative instruction"). True, an objection and limiting instruction could certainly aid a jury in considering evidence only for a proper purpose. Logically, however, it cannot be easier to obtain a new trial by failing to object the first time, and then mounting a challenge on appeal.

On plain error review, we cannot conclude that the failure to declare a mistrial upon this testimony was a reversible abuse of the district court's discretion.

**C.**

Third, Rolling argues that the evidence at trial was insufficient to support his conviction. In evaluating a challenge to a conviction on sufficiency of the evidence, we ask whether any reasonable jury could have found "the essential elements of the crime beyond a reasonable doubt." *United States v. Hughes*, 505 F.3d 578, 592 (6th Cir. 2007) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In doing so, we "view all evidence and resolve all reasonable inferences in favor of the government," and we do not independently judge the credibility of witness testimony. *Id.* Reversal on insufficiency of the evidence is a difficult standard for a defendant to meet. Rolling does not meet this standard.

The jury convicted Rolling of violating 18 U.S.C. § 1951, which provides that "[w]hoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires to do so" shall be fined or imprisoned. "Robbery" is defined as "the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining." *Id.* Under 18 U.S.C. § 2, someone who aids or abets the commission of a crime against the United States may be charged as a principal. To obtain these convictions, the government must establish beyond a reasonable doubt that Rolling aided and abetted the robberies, and attempted robbery, as set out in Counts 3, 4, 5, and 6.

Rolling argues that Jurl's testimony was the primary evidence linking him to the crimes, that the only two charges for which Jurl's testimony stood in isolation were the counts on which

he was acquitted, and thus that the jury must have found Jurl's testimony not credible. Then, assuming that the jury disregarded Jurl's testimony, Rolling argues that there was insufficient evidence to convict him on the remaining four charges.

This court, guided by the Supreme Court, has consistently held that inconsistency in jury verdicts does not mean the evidence supporting the convictions is legally insufficient. *United States v. Ashraf*, 628 F.3d 813, 823 (6th Cir. 2011) (citing *United States v. Powell*, 469 U.S. 57, 65 (1984)). A defendant may not argue that a partial acquittal means the jury "rejected the government's theory" in a way that undercuts a guilty verdict on other charges. *Id*. It follows that "inconsistent verdicts are generally held not to be reviewable." *United States v. Lawrence*, 555 F.3d 254, 262 (6th Cir. 2009).

With this in mind, sufficient evidence existed for the jury to find that Rolling aided and abetted the credit union and cash advance robberies. Jurl's sworn testimony implicated Rolling from start to finish: selecting locations and timing, providing transport, and dividing up the proceeds. But Jurl's testimony did not stand alone. Location data from the GPS tracker placed Rolling's car driving around a credit union before he and Jurl were arrested. Bait bills from two separate robberies were found in his wallet when he was arrested, and distinctive red shoes linked to a robbery were found in his trunk. Rolling admitted on the stand to lying to the police, when first stopped on December 2, 2021, about whether he knew Jurl and where he had picked Jurl up—casting doubt on Rolling's contention that he had driven Jurl to all the robberies without knowing what Jurl was doing there. Finally, unlike when he gave rides to other friends, Rolling did not park immediately outside the destination—supporting an inference that Rolling knew what would happen and did not want to be captured on a credit union's security camera.

Further, as the government points out, Rolling seems to assume in his sufficiency of the evidence challenge that the evidence from the phone seized in his car would be excluded based on his Fourth Amendment claim. Because we affirm the district court's decision denying Rolling's motion to suppress, the cell phone evidence remains available for the jury to have permissibly considered alongside Jurl's testimony. This evidence corroborates Jurl's testimony. The cell phone evidence provides a further basis for the jury to find that Rolling had knowledge that the trips with Jurl were made to commit the charged robberies. Based on the evidence adduced at trial, we find that a reasonable juror could have found the essential elements to convict Rolling on Counts 3, 4, 5, and 6 beyond a reasonable doubt.

Rolling's challenge to the legal sufficiency of the evidence fails.

**D.**

Fourth, and finally, Rolling argues that his sentence was unreasonable. We review sentences for procedural and substantive unreasonableness under an abuse of discretion standard. *United States v. Cunningham*, 669 F.3d 723, 728 (6th Cir. 2012).

A sentence is procedurally reasonable when "district courts properly calculate the guidelines range, treat the guidelines as advisory, consider the [18 U.S.C. §] 3553(a) factors and adequately explain the chosen sentence." *United States v. Allen*, 93 F.4th 350, 355 (6th Cir. 2024). The parties agreed with the district court's ultimate calculation of the guidelines range, and Rolling does not contest the district court's treatment of the guidelines, whether it considered the § 3553(a) factors, or the adequacy of its explanation. Rolling's sentence is procedurally reasonable.

A sentence that is within the guidelines range is accorded a rebuttable presumption in favor of substantive reasonableness. *United States v. Sexton*, 894 F.3d 787, 797 (6th Cir. 2018). Rolling takes issue with the district court's denial of his motion for a downward variance and argues that

the district court "overstated Mr. Rolling's criminal history" by relying on, and giving too much weight to, selective and comparatively remote incidents. CA6 R. 13, Appellant Br., at 35-36. On the contrary, the district court considered Rolling's entire criminal history, listing several different offenses and characterizing the history as "quite serious," and a "theft history as well as an assaultive history . . . which gives the Court some concern." DE128, Sentencing Hearing, Page ID 1691. The district judge denied the government's motion for an upward variance as well as Rolling's motion for a downward variance, and rejected the government's contention that Rolling was the organizer or leader of the robberies, decreasing his guidelines range. The district judge also noted that Rolling's past sentences for different offenses had not served as a deterrent.

And although a sentencing judge may consider the remoteness of past criminal history in making a downward departure, *see* USSG § 4A1.3(b) and commentary (giving examples of circumstances that may merit a downward departure), the failure to do so is not an abuse of discretion. *See United States v. Lundy*, 366 F. App'x 590, 593 (6th Cir. 2010). This is especially so considering that Rolling never raised the remoteness of his prior crimes during sentencing. *United States v. Walls*, 546 F.3d 728, 737 (6th Cir. 2008) (holding that a district court does not abuse its discretion when it does not consider mitigating factors not raised during sentencing). On abuse of discretion review, we cannot conclude that Rolling's sentence was substantively unreasonable.

We affirm the judgment of the district court.